## Gustin Bacon Manufacturing Company, Appellee, v. First National Bank of Englewood, Appellant.

### Gen. No. 26,869.

1. BANKS AND BANKING—*when bank liable to maker of check for amount thereof*. Where a check was mailed by a purchaser of goods to the Chicago office of the seller and notice of rejection of the articles was received at such Chicago office prior to the arrival of the check, and where the manager directed an employee to mail the check to the principal office, as the Chicago office had no authority to indorse checks, but instead of so mailing the check the employee indorsed it and deposited it to his own account with his bank, and before the latter had actual notice of irregularity the proceeds had been practically checked out by such employee, and where the bank, in an action by the maker to recover the amount of the check, claimed that such employee had authority to indorse the check, the defense was not sustained and the bank was held liable, where although it appeared that such employee had with another once carried on business in the same name as the payee

of the check and had at one time represented such payee, all author-ity to do so had been withdrawn prior to the transaction in question.

2. Banks and banking—*when bank liable to maker of check in trover.* In an action against a bank by the maker of a check which had been wrongfully indorsed by a party other than the payee and deposited to the credit of such party and the funds withdrawn, the burden of proving the authority of such party to indorse the check was upon defendant, and failing therein, and no other defense being interposed, the bank was liable in trover for the conversion of the check upon payment by it to such party.

3. Banks and banking—*who is proper party to bring action against bank for amount of check.* Where a check was delivered in payment for goods which were rejected and returned, and notice of the rejection reached the manager of the payees' Chicago office prior to the receipt of the check, it was the duty of the payee to return the check to the maker as he was the true owner of the check and of the fund represented by it, and therefore such maker was the proper party to bring an action for the amount of the check against the bank which paid the proceeds of the check to one of its de-positors, who was an employee of such Chicago office of the payees, pursuant to a forged indorsement of the payees' name; and such right of action was not in the payees because they at no time made any claim against the maker on account of the transaction.

4. Banks and banking—*amount to which maker of check suing bank in trover damaged.* In trover by the maker of a check against a bank which had paid the amount of the check to one of its de-positors pursuant to a fraudulent indorsement, the face value of the check having been paid, plaintiff was damaged to that amount, as the value of the property in the action for conversion is fixed as of the date of the conversion.

5. Banks and banking—*when rule as to one of innocent parties who must bear loss not applicable in favor of bank.* The rule that where one of two innocent parties must suffer loss, he who is the cause or occasion of that confidence by which the loss has been brought about ought to bear it, had no application in favor of a bank which paid a check pursuant to a fraudulent indorsement, because the maker owed no legal duty to the bank and was not bound to stop payment upon his rejection of the goods for which the check had been given, or to assume that a depositor in such bank would forge an indorsement, or to presume that the bank, without taking precautions, would collect and pay the amount of the check in reliance on such forged indorsement.

6. Banks and banking—*when contributory negligence not avail-able to banks as defense.* Contributory negligence is not, generally speaking, a defense in actions against banks for conversion because of the payment of a check pursuant to fraudulent indorsement. On

the contrary, the defendant in such an action was bound to ascertain the genuineness of the indorsement upon the check in question at its peril.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in this court at the March term, 1921. Affirmed. Opinion filed April 3, 1922. Rehearing denied April 17, 1922.

HARRIS F. WILLIAMS, for appellant; CYRUS HEREN, JAMES A. O'CALLAGHAN and ELDON M. VOTAW, of counsel.

ALDEN, LATHAM & YOUNG, for appellee; CHARLES MARTIN, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The defendant below, First National Bank of Englewood, appeals to this court from a judgment in favor of Gustin Bacon Manufacturing Company, a corporation, plaintiff. The judgment was entered on the finding of the court.

The plaintiff's statement of claim alleged that on the 18th day of October, 1919, it was the owner and lawful possessor of a certain check drawn by it on the New England National Bank of Kansas City, Missouri, payable to the order of John Lord's Sons, dated October 10, 1919, for the sum of $2,175.92; that the defendant wrongfully and without authority from the plaintiff procured possession of the check without the indorsement of the payee, the said "John Lord's Sons," or by their authority, and converted said check and amount of money represented by it to its own use; that the indorsement appearing on the check was a forgery and was placed thereon before it came into possession of defendant; that plaintiff has demanded payment by the defendant of the amount of the check, which has been refused.

To this statement the defendant bank filed an affidavit of merits, alleging a good defense to the whole of the demand, which was stated to be that the defendant was the owner of the check on October 18, 1919, and lawfully possessed of it; that it did not wrongfully procure possession of the check without authority and that the indorsement was not a forgery.

The affidavit further alleged that the plaintiff did not exercise due diligence in notifying the drawee bank of any irregularities in the transfer or indorsement of the check, or of its objection to the payment of the check, and that plaintiff was negligent in failing to stop payment thereon. The court found the issues against the defendant and assessed the damages at the sum of $2,298.23, the amount of the check with interest thereon. Findings of fact and propositions of law were submitted to the court by the respective parties, and the rulings of the court thereon appear in the record.

As to the material facts there seems to be little dispute. Harry and Charles Lord were a copartnership, doing business under the name of John Lord's Sons. Their principal office and place of business was in Philadelphia, Pennsylvania. The business of the copartnership was the manufacture and sale of cotton and woolen waste. The copartnership at the time this transaction occurred had an office at 939 West Van Buren street, Chicago. The manager of the Chicago office at that time was one Melvin. He employed as a clerk in his office Walter J. Riddle, who at a prior time had been a member of a copartnership consisting of himself and one Rivet, which did business under the name of John Lord's Sons, and which represented the Philadelphia copartnership as its agent in Chicago and contiguous territory. This copartnership, however, had ceased to act for John Lord's Sons prior to the transaction out of which this controversy arose. Riddle was afterwards employed

by Melvin on account of his knowledge of the trade and business. Neither he nor Melvin had authority to indorse checks which were payable to the order of John Lord's Sons, the members of the copartnership reserving the right to themselves; and all checks were indorsed by them. These checks were usually indorsed with a rubber stamp, which read, "For deposit only to the credit of John Lord's Sons."

A carload of waste was sold to plaintiff through Riddle. After giving the order for the carload of waste the plaintiff on October 10, 1919, drew its check to the order of John Lord's Sons on the New England National Bank, Kansas City, Missouri, and mailed this check in an envelope addressed to John Lord's Sons at the Chicago office. Later plaintiff rejected the car of waste and it was returned to Chicago, placed in the warehouse and afterwards sold to other parties. The notice that the waste was rejected reached the Chicago office prior to the arrival of the check. The manager, Mr. Melvin, directed Riddle to mail the check to the Philadelphia office. Riddle took the check but did not send it to Philadelphia. He had an account with the defendant bank. He indorsed the check John Lord's Sons and W. J. Riddle, and so indorsed deposited it in his account with the defendant bank, which received the same for collection, and about two weeks thereafter the amount of the check was by the defendant bank credited to Riddle's account. Thereafter, and before the defendant bank had any actual notice of irregularity, Riddle checked out the proceeds with the exception of $18.54.

November 19, defendant was informed that Riddle had no authority to indorse the check.

The contention is made by the appellant that Riddle had authority to indorse the check; but there is, we think, no evidence in the record from which such authority may be justly inferred. There was a firm, as already stated, composed of Rivet and Riddle, doing

462    APPELLATE COURTS OF ILLINOIS.

Gustin Bacon Mfg. Co. v. First National Bank, 224 Ill. App. 457.

business under the name of John Lord's Sons. This copartnership at one time represented John Lord's Sons of Philadelphia, but all authority so to do had been withdrawn prior to this transaction.

After the case was closed the defendant asked leave to have it opened up, which request was granted, and the court received evidence to the effect that this copartnership of Rivet and Riddle had, some months prior to the transaction, an account with the defendant bank, which account had in fact been closed. The checks received in evidence, drawn in connection with that account, show that the same were not drawn nor the firm indorsement thereon made in the same manner as the indorsement made by Riddle on the check in controversy. There is no evidence tending to show that the defendant bank at any time supposed that it was dealing with that copartnership in this transaction or relied upon any such supposed fact. We think that evidence was therefore wholly immaterial. The burden of proving authority of Riddle to indorse the check in controversy was upon the defendant bank, which received the check from him. *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 151; *Hamlin's Wizard Oil Co. v. United States Exp. Co.,* 265 Ill. 156 [7 N. C. C. A. 638]; *Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co.,* 223 Ill. 41.

The law applicable to the facts is stated in Morse on Banks and Banking, vol. 1, sec. 248, where it is said:

"If a negotiable instrument, having a forged indorsement, comes to the hands of a bank and is collected by it, the proceeds are held for the rightful owners of the paper, and may be recovered by them, although the bank gave value for the paper, or has paid over the proceeds to the party depositing the instrument for collection."

The indorsement of Riddle being unauthorized, unless some other defense is made to appear, the de-

fendant was, under the authorities, liable in trover for the conversion of the check upon payment by defendant to Riddle. *Bentley, Murray & Co. v. LaSalle Street Trust & Savings Bank,* 197 Ill. App. 322; *Rauch v. Ft. Dearborn Nat. Bank,* 223 Ill. 507; *Talbot v. Bank of Rochester,* 1 Hill (N. Y.) 295; *State Bank of Chicago v. Mid-City Trust & Savings Bank,* 217 Ill. App. 81.

The copartnership of which Riddle was a member had nothing to do with the sale of the goods to plaintiff, and there is not a scintilla of evidence in the record that the plaintiff ever knew of the existence of any such a partnership doing business as John Lord's Sons. Plaintiff therefore could not have intended to make payment to that copartnership, and could not have intended to make that copartnership the payee of the check, all of which Riddle well knew. It is therefore unnecessary for us to discuss propositions of law and cases cited in support of them that are based on this untrue assumption as to the facts.

Appellant says that this action in trover will not lie because plaintiff did not have the title and right to possession of the check at the time of bringing suit; that the check had been delivered to John Lord's Sons at the time of its alleged conversion; that they were payees named therein and therefore having title and possession any right of action for the conversion of the check was in John Lord's Sons and not in plaintiff; further, that a payee to whom a check has been delivered is the owner and entitled to possession of it; that the mere failure of consideration would not revest the maker of the check with title, and especially would this be true where, as here, there has been no demand upon the payee for the return of the check; and that demand for the delivery of the check to the maker in such a case is clearly essential.

We think these contentions also are based on assumption of facts which are not sustained by the evi-

dence in the case. Whether the check was in fact delivered depends in the last analysis upon the intention of the parties in that respect. This check was issued in payment for goods. These goods were rejected and returned. The notice of such rejection reached the manager of John Lord's Sons of Philadelphia in Chicago prior to the receipt of the check. Under the circumstances disclosed it was the duty of the payee to return the check to the plaintiff, as it must have been apparent that it was mailed by mistake. John Lord's Sons at no time have made any claim against plaintiff on account of the transaction.

On the trial one of the partners testified positively that the copartnership had no claim against the plaintiff on account of the check. The sale was rescinded prior to receiving the check at Chicago, and the payee acquired no interest in it. In discussing a similar question in *First Nat.. Bank of Chicago v. Pease,* 168 Ill. 40, our Supreme Court said:

"If the payee named in the check or bill had no interest therein and it never passed into such payee's hands, and the payee's name was indorsed thereon as a forgery, then the drawer has never parted with the funds misapplied by the bank, and it is bound to replace the same. Where a bank pays a bill or check on a forged indorsement it is liable to some one for funds so wrongfully paid out. The liability must be to the drawer or to the payee. If the instrument belongs to the payee, liability is to him, and if it has never been received by the payee and he has no interest therein, then it belongs to the drawer."

And in *Gross v. Arnold,* 177 Ill. 575, the court said:

"Placing of a note or other instrument in the hands of another, though the payee of the note, does not conclusively establish a delivery of the note or instrument, within the legal meaning of that word. Delivery is a question of intent, and depends on 'whether parties at the time meant it to be a delivery to take effect at once.'"

And in Corpus Juris, vol. 8, sec. 334, p. 203, it is said:

"It does not necessarily follow from the fact that the payee or his agent has possession of the bill or note that there has been a delivery of the instrument, since it may have come into hands without any intent on the part of the drawer or maker to make a delivery. Intention to deliver the instrument is necessary to a valid delivery, and there can be no valid delivery where it was obtained by fraud, duress or mistake. On the other hand, mere intention, not carried out, will not constitute a delivery."

We think the undisputed evidence in this case tends to show that the plaintiff was the true owner of the check and of the fund represented by it at the time when defendant received the proceeds thereon and paid the same to Riddle. As it was the true owner, it was therefore the proper party to bring action.

But appellant further says that, conceding the foregoing, the check had not been indorsed by the payee and was therefore worthless; that if the maker had been sued on it, he could have successfully defended on the ground that the consideration had failed; that the check did not operate as an assignment of the fund since the enactment of the present Negotiable Instruments Law, and that the drawee bank would not be liable until it had accepted the check; that an innocent holder could get no title by means of a forged indorsement; that the check was returned to plaintiff before it was indorsed by the true payee and before this suit was brought; and that there is therefore no damage.

Appellant further says that there is no proof of a demand of the check and that no special damages are alleged; that the proof that the goods were returned and accepted shows affirmatively the worthlessness of the check, because the debt it was intended to pay was canceled by the return of the goods, and the check could be applied to no valuable purpose. It says

if plaintiff did not pay the check it is not damaged; that if it wishes both to return the goods and to pay the check, it may do so, but cannot thus augment the damages which defendant would be required to pay.

In the first place, we think there is evidence in the record tending to show that the check was in fact paid. The indorsements thereon indicate that it was so paid and defendant's affidavit of merits affirmatively avers that the check was collected by the defendant. Plaintiff's statement of claim avers not only the conversion of the check, but of the amount of money represented by the face of it.

The value of the property in the action for conversion is fixed as of the date of the conversion, and on that date this check was prima facie worth its face value. If the face value of the check was paid, as we think must be inferred from the evidence, then clearly the plaintiff was damaged to that amount.

Appellant further contends that under the facts as set forth the plaintiff is estopped to maintain the action by reason of its negligence; that plaintiff knew the goods were returned and that the consideration therefor had failed; that he knew defendant might become secondarily liable upon its indorsement of the check; that an order from plaintiff stopping payment of the check, which it had a right to do, would have prevented damage both to plaintiff and defendant, and in this connection the defendant invokes the rule of law that where one of two innocent parties must suffer loss, he who is the cause or occasion of that confidence by which the loss has been brought about ought to bear it. We do not think there is any merit in these contentions. Plaintiff owed no legal duty to the defendant bank. It was not bound to assume that a depositor in defendant's bank would forge an indorsement on the check, or to presume that defendant, without taking precautions, would collect and pay the amount of the check, relying on such a forged in-

dorsement. The rules of estoppel are not applicable to the facts in this case. On the question of authority of Riddle to indorse paper for the real payee, estoppel might be invoked if there were facts making it applicable; or if there were facts tending to show that a depositor was negligent, after receiving his returned checks, in notifying his own bank of a forgery, which, in the exercise of reasonable care, he should have learned of, then as between such depositor and the bank the doctrine of estoppel might be invoked; but beyond this the courts have not gone in this class of cases.

Contributory negligence is not, generally speaking, a defense in this class of cases. On the contrary, defendant was bound to ascertain the genuineness of the indorsement upon this check at its peril. The rule rests upon public policy, and is necessary for the security of commercial transactions, although hardship often results from its application. *Hamlin's Wizard Oil Co. v. United States Exp. Co.*, 265 Ill. 156 [7 N. C. C. A. 638].

For the reasons indicated the judgment is affirmed.

*Affirmed.*

DEVER, P. J., and McSURELY, J., concur.