WABASH INDEPENDENT OIL COMPANY, Plaintiff-Appellee and Cross-Appellant, v. KING AND WILLS INSURANCE AGENCY *et al.*, Defendants and Counterplaintiffs-Appellants and Cross-Appellees and Third-Party Plaintiffs (Jerry Hall, Defendant and Counterdefendant; First National Bank and Trust Company of Douglas County, Third-Party Defendant).

Fifth District   No. 5—92—0262

Opinion filed August 4, 1993.

Michael E. Raub, Heyl, Royster, Voelker & Allen, of Urbana, for appellants.

LeFevre, Zeman, Oldfield & Schwarm Law Group, Ltd., of Vandalia (Larry L. LeFevre, of counsel), for appellee.

JUSTICE MAAG delivered the opinion of the court:

The plaintiff, Wabash Independent Oil Co., brought suit against defendants, King & Wills Insurance Agency, Phillip A. Wills and Phillip Joseph Wills, as partners doing business as King & Wills Insurance Agency, Phil A. Wills, an individual, and Phillip Joseph Wills, an individual (hereinafter collectively referred to as King & Wills), and Jerry R. Hall.

The facts of this case are not in serious dispute. On May 15, 1988, Jerry R. Hall signed a solicitor's agreement with King & Wills Insurance Agency. Pursuant to the terms of the agreement, Hall was to work as an independent contractor for King & Wills by soliciting insurance business for King & Wills.

Hall continued to work under the parties' agreement until on or about October 24, 1989. During this period that Hall worked under the solicitor's agreement, he sold insurance policies for King & Wills which included auto, home, health, and commercial insurance policies.

King & Wills provided Hall with office space in their office. They also provided Hall with business cards which name Jerry R. Hall as a sales representative of King & Wills. King & Wills obtained a life insurance policy on Hall's life. Phillip A. Wills signed the life insurance application which lists King & Wills as Hall's employer and beneficiary. In various advertisements, which included the yellow pages, a billboard, and a newspaper article published in June of 1988, King & Wills held Hall out as a member of their agency. Hall's name also appeared on King & Wills' outdoor office sign.

In approximately October of 1988, Hall met with the principals of Wabash and quoted an insurance premium price to Wabash for a full commercial insurance package. Ultimately, a worker's compensation policy was placed for Wabash by Hall, and King & Wills sent premium notices to Wabash. King & Wills received a commission for the worker's compensation policy Hall sold to Wabash.

In response to the commercial insurance package quotation, Hall received a down payment from Wabash. The down payment was tendered to Hall in the form of a Wabash check made payable to King & Wills. The full commercial insurance policy was to run from November 1, 1988, to November 1, 1989. Jerry Hall deposited the down payment check into a business account of his own. Hall never procured the insurance promised to Wabash. Hall created a fictitious policy for Wabash made of computer printouts and cover pages from a legitimate policy Hall had procured insuring Wabash. Hall admitted to creating the fictitious policy after business hours or on Saturdays when the King & Wills office was closed.

From time to time, Hall sent premium notices to Wabash for the fictitious commercial policy. Wabash sent checks to King & Wills payable to King & Wills in response to the premium notices. Hall intercepted these checks by removing the checks from King & Wills' post office box. Ultimately, Hall received approximately $60,000 from Wabash and used it for his own benefit.

King & Wills never required Hall to provide an itinerary of the places he visited to solicit business, nor did they monitor his activities. King & Wills were not aware that Hall had been receiving and cashing the premium checks from Wabash. King & Wills never received any of the monies misappropriated by Hall. During the time Hall worked under the solicitor's agreement, Darrel May, one of the principals of Wabash, received communications from King & Wills concerning a personal auto policy which he had obtained through Hall. Hall also entertained the Wabash principals at the Urbana Country Club by using Phillip Joseph Will's membership with that institution.

The record indicates that because no policy was actually issued, there are $1,416.12 in unpaid claims. These claims would have been paid if a genuine policy had been procured.

On May 24, 1990, Wabash filed a complaint against King & Wills and Hall. Hall filed bankruptcy, which stayed the proceedings against him. Four counts of Wabash's complaint are directed against King & Wills. Count III alleges misappropriation of funds, count IV alleges deceptive trade practices, count V alleges a failure to procure insurance, and count VI alleges errors and omissions. King & Wills and Wabash both filed motions for summary judgment. The trial court granted King & Wills' motion for summary judgment on count IV (deceptive trade practices) and denied both parties' motions with respect to count VI (errors and omissions). The trial court granted Wabash's motion for summary judgment on the issue of liability on count III (misappropriation of funds) and count V (failure to procure insurance).

On January 24, 1992, the trial court entered judgment in favor of Wabash and against King & Wills in the amount of $60,137.32 plus prejudgment interest on count III and in the sum of $60,137.32 under count V. The trial court refused to award Wabash attorney fees under count V.

On appeal, King & Wills raise the following issues:

1. Did the trial court err in entering summary judgment on a finding that Hall was an agent or employee of King & Wills?

2. Even if Hall was properly found to be an agent or employee of King & Wills, did the trial court err in holding King & Wills liable for Hall's misappropriation under the facts presented?

3. Was the correct measure of damages applied with respect to the count alleging misappropriation of funds?

Although summary judgment is a drastic remedy which should only be employed if the right of the movant is free from doubt (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871), it is appropriate when the parties agree on the material facts and the only dispute concerns the legal effect of those facts. (*Hagy v. McHenry County Conservation District* (1989), 190 Ill. App. 3d 833, 842, 546 N.E.2d 77, 84-85.) In the present case, the parties do not dispute the relevant facts; they only disagree under the facts of this case whether Hall was an agent of King & Wills. On appeal from the grant of a motion for summary judgment, a reviewing court must determine whether the trial court properly ruled that no genuine issue of material fact was raised and, if none was raised, whether summary judgment was properly entered as a matter of law. (*Dockery v. Ortiz*

(1989), 185 Ill. App. 3d 296, 305, 541 N.E.2d 226, 231.) In the case before us, we find that no genuine issue of material fact was raised and summary judgment was properly entered as a matter of law.

■ The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused the injury. An exception is the doctrine of *respondeat superior*. (*Metzler v. Layton* (1939), 373 Ill. 88, 91, 25 N.E.2d 60, 61.) Whether the relationship of principal and agent, or owner and independent contractor, exists is a question of fact, unless the relationship is so clear as to be indisputable. *Yuhas v. Allis-Chalmers Distribution Service Corp.* (1973), 12 Ill. App. 3d 814, 821, 299 N.E.2d 166, 170.

King & Wills allege that the trial court erred in finding Hall to be an agent or employee of King & Wills. The basis of their argument is that Hall was an independent contractor. They rely upon the solicitor's agreement which specifically labels Hall an independent contractor, and they also rely on the fact that they did not monitor Hall and exercised little control over how Hall performed his duties. King & Wills correctly state that the test to determine whether one person is an agent of another centers on the principal's right to control the actions of the agent. (*Wargel v. First National Bank* (1984), 121 Ill. App. 3d 730, 460 N.E.2d 331.)

> "The right to control the manner of doing the work is an important if not the principle consideration that determines whether the worker is an employee or an independent contractor." *Perkinson v. Manion* (1987), 163 Ill. App. 3d 262, 266, 516 N.E.2d 977, 980.

At no time have King & Wills argued that they could not monitor or direct Hall's duties and activities; they simply state that they did not monitor, direct, or control Hall's activities.

We believe that the case before us is one of apparent agency. Generally, one who holds out another as his agent to act in a given capacity and by habits and course of dealings justifies the inference that such person is authorized to act as an agent, whether it be a single transaction or in a series of transactions, will not be heard to deny the agency to the prejudice of an innocent person who has been led to rely on the appearance of authority in the agent. *Morse v. Illinois Power & Light Corp.* (1938), 294 Ill. App. 498, 503-04, 14 N.E.2d 259, 251.

The doctrine of apparent agency is based upon the doctrine of equitable estoppel (*Crittendon v. State Oil Co.* (1966), 78 Ill. App. 2d 112, 115, 222 N.E.2d 561, 563-64, quoting *Morse v. Illinois Power & Light Corp.*, 294 Ill. App. at 503-04), and it is only conduct or repre-

sentations of the alleged principal that can be set up as a basis for estoppel. (*Crittendon v. State Oil Co.*, 78 Ill. App. 2d at 116, 222 N.E.2d at 564.) Both doctrines, when used to bind a principal to the acts of an agent as against a third person, are based upon the same elements.

■ To prove apparent agency, one must establish:

"(1) the principal's consent to or knowing acquiescence in the agent's exercise of authority, (2) the third person's knowledge of the facts and good-faith belief that the agent possessed such authority, and (3) the third person's reliance on the agent's apparent authority to his or her detriment." *Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, 278, 522 N.E.2d 699, 704, citing 3 Am. Jur. 2d *Agency* §80 (1986).

■ In the case before us, there is no doubt that King & Wills consented to Hall soliciting insurance business on their behalf. King & Wills held Hall out to the public as their employee or agent by their advertisements, business cards, business sign, and acts. Based upon the public representations made by King & Wills, as well as the prior legitimate insurance dealings, including Wabash's worker's compensation policy and the personal auto insurance, it would not be unreasonable for Wabash to possess a good-faith belief that Hall was the agent of King & Wills. It is equally apparent that Wabash relied upon Hall's apparent authority to its detriment.

A principal who has placed an agent in a situation where he may be presumed to have authority to act is estopped as against third persons from denying the agent's apparent authority. (*Crawford Savings & Loan Association v. Dvorak* (1976), 40 Ill. App. 3d 288, 292-93, 352 N.E.2d 261, 264.) We believe that the trial court properly found Hall to be an agent of King & Wills. They placed Hall in a position equivalent to the agent in a principal-agent relationship, and King & Wills are estopped from denying that Hall was acting as their agent.

The second contention of error raised by King & Wills is that the trial court erred in holding King & Wills liable for Hall's misappropriation. King & Wills argue that Hall's apparent agency does not answer the pivotal question of whether the apparent agency encompasses Hall's theft of the checks. It is their contention that they are not liable for Hall's wrongful acts since Hall left the scope of any agency he enjoyed with King & Wills the first time he received a check from Wabash and converted it to his own use. We answer the pivotal question in the affirmative: the theory of apparent agency does encompass Hall's theft.

. .

■ The doctrine of estoppel developed to prevent injustice or fraud (*Northern Trust Co. v. St. Francis Hospital*, 168 Ill. App. 3d at 279, 522 N.E.2d at 705), and where injury has resulted from the wrongful act of a third person, the damages flowing from the wrongful act must be borne by the party whose conduct made possible the wrongdoer's act, breach of trust, fraud, or negligence. When one of two innocent persons must suffer by the act of a third, he who by his conduct, act, or omission enabled the third person to occasion the loss must sustain the loss. (*First National Bank v. Paris* (1934), 358 Ill. 378, 193 N.E. 207; 18 Ill. L. & Prac. *Estoppel* §27 (1956).) And when one of two innocent persons, *i.e.*, persons each guiltless of an intentional moral wrong, must suffer a loss, it must be borne by that one of them who by his conduct has rendered the injury possible or who could have prevented it. *National Premium Budget Plan Corp. v. La Salle Casualty Co.* (1967), 81 Ill. App. 2d 466, 471, 225 N.E.2d 400, 403, citing 28 Am. Jur. 2d *Estoppel & Waiver* §62 (1966).

Clearly, Wabash and King & Wills were innocent of any intentional wrongful act, but it is also patently clear that King & Wills did little to monitor Hall or his activities. In their brief, King & Wills correctly state that the mere fact that Hall was able to accomplish the fraud indicates that King & Wills did not constantly monitor or direct Hall's activities. Certainly, King & Wills, by their conduct, rendered the injury possible, and of the two parties, they were in the superior position to prevent the loss. Accordingly, the loss must be borne by King & Wills.

The last issue raised by King & Wills is that the trial court employed an improper measure of damage. With respect to count III (misappropriation), King & Wills correctly point out that the proper legal name that should attach to count III is that of conversion. It is their position that Wabash did not establish the facts necessary to recover under the tort of conversion and Wabash is not entitled, therefore, to recover damages under this theory.

King & Wills rely upon the case of *General Motors Corp. v. Douglass* (1990), 206 Ill. App. 3d 881, 565 N.E.2d 93, to advance their argument that Wabash did not establish the facts necessary to recover under a theory of conversion. The *General Motors* case involved the issue of whether a defendant can convert a check made payable to the defendant. General Motors sued one of its dealers claiming that it had mistakenly paid the dealer. The dealer cashed the check although General Motors had demonstrated its entitlement to the money and had demanded the return of the check. The trial court entered summary judgment in General Motors' favor, but the appellate court reversed.

The appellate court held: "a proper complaint for conversion must allege: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personality; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property [citation]. The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *General Motors*, 206 Ill. App. 3d at 886, 565 N.E.2d at 96-97.

The appellate court found that one of the essential elements of conversion, that being General Motors' right to immediate possession as against the defendant, was lacking. General Motors failed to establish that the money, at all times, belonged to it and that the defendant had converted it to his own use. *General Motors*, 206 Ill. App. 3d at 892, 565 N.E.2d 100.

The case before us is clearly distinguishable from the *General Motors* case. It is true that the checks that Wabash wrote were made payable to King & Wills, but there is no question that the money at all times belonged to Wabash. Wabash had the absolute and unconditional right to possession of the money based upon the fiduciary relationship imposed by the Illinois Insurance Code. Ill. Rev. Stat. 1987, ch. 73, par. 613 *et seq.*

Section 508.1 of the Insurance Code provides:

"Any money which an insurance producer *** receives for soliciting, negotiating, effecting, procuring, renewing, continuing or binding policies of insurance shall be held in a fiduciary capacity, and shall not be misappropriated, converted or improperly withheld." Ill. Rev. Stat. 1987, ch. 73, par. 1065.55—1.

Under Illinois law the measure of damages is *prima facie* the amount of the face value of the notes and bills in question (*Bentley, Murray & Co. v. La Salle Street Trust & Savings Bank* (1916), 197 Ill. App. 322), and the value of property in an action for conversion is fixed as of the date of the conversion. On that date, the amount of the check is *prima facie* evidence of its value. (*Gustin Bacon Manufacturing Co. v. First National Bank* (1922), 224 Ill. App. 457, 466, aff'd (1922), 306 Ill. 179, 137 N.E. 793; see *Smith v. General Casualty Co.* (1979), 75 Ill. App. 3d 971, 394 N.E.2d 804.) We find no error in the trial court's award of the face amount of the checks as damages under count III.

We turn now to the damages awarded under count V (failure to procure insurance). Our supreme court ruled in *Cottingham v. National Mutual Church Insurance Co.* (1919), 290 Ill. 26, 32, 124 N.E.

822, that to prove a contract to procure insurance has been entered into, "[i]t is sufficient if one of the parties to such a contract proposed to be insured and the other party agrees to insure, and the subject, the period, the amount and the rate of insurance are ascertained or understood and the premium paid if demanded."

It is King & Wills' contention that the only damages that Wabash is entitled to is the $1,416.12 in unpaid claims. These unpaid claims are the only damages Wabash has substantiated. Wabash argues in response that it sought a full commercial policy which included products liability coverage. This would result in coverage for claims for many years, since an occurrence rather than a claims-made policy was requested.

■■ We find King & Wills' argument in this regard to be without merit. Basic contract law provides that the measure of damages for the breach of a contract is the amount necessary to compensate the injured person for the loss which a fulfillment of the contract would have prevented. *Hirsch v. Bollmeier* (1962), 34 Ill. App. 2d 203, 180 N.E.2d 521.

In cases involving a wrongful failure to procure insurance, the law will impose the terms of the contract that would have been issued if there had been compliance with the agreement to procure. See *Wheaton National Bank v. Dudek* (1978), 59 Ill. App. 3d 970, 973, 376 N.E.2d 633; *Scarsdale Villas Associates, Ltd. v. Korman Associates Insurance Agency, Inc.* (1988), 178 Ill. App. 3d 261, 533 N.E.2d 81.

The plaintiff in the *Wheaton* case sued its insurance agent, claiming that the agent had failed to properly insure several snowmobiles that the plaintiff owned. The appellate court affirmed the jury verdict in favor of the plaintiff and found that, since no contract of insurance was ever produced, it was impossible to determine the measure of damages agreed upon apart from the $50 deductible on each snowmobile. The court ruled that the proper measure of damages was the fair market value of the items immediately prior to the loss. (*Wheaton*, 59 Ill. App. 3d at 973, 376 N.E.2d at 636.) The *Wheaton* court essentially placed the insurance agent in the position of an insurer, requiring him to make good on the losses which would have been covered had proper insurance been obtained.

Generally, the value of the item sought to be insured and the damages awarded in cases involving a wrongful failure to procure insurance greatly exceed the premiums that would be due on the policy. In the case before us, we have a situation where a large premium was paid, and the window of opportunity for substantial losses extends for a long period of time. Wabash simply sought the amount of the pre-

mium paid although it may have been entitled to have King & Wills placed in the position of the insurer for claims arising under the non-existent full commercial insurance policy. We find no error in the trial court's award of damages consistent with Wabash's prayer that it merely receive as damages the amount of the premiums paid.

■■ Lastly, we address the issue of Wabash's attorney fees. It is a well-established principle of Illinois law that, absent a statutory or contractual basis, each party to litigation must bear its own attorney fees. (*Ritter v. Ritter* (1943), 381 Ill. 549, 46 N.E.2d 41.) Wabash relies. on *National Boulevard Bank v. Brokerage Resources, Inc.* (1978), 62 Ill. App. 3d 159, 378 N.E.2d 1217, to support its argument that it is entitled to attorney fees under count V (failure to procure insurance) as damages. The court, in *National Boulevard Bank,* did grant the plaintiff's attorney fees, but the fees awarded as damages were not incurred by the plaintiff in prosecuting its claim against its insurance agent for failure to properly obtain insurance. Rather, the fees awarded were premised on fees incurred in litigation with a third party. In the instant case, Wabash was merely prosecuting its claims against King & Wills. The fees incurred were merely a normal incident of any breach of contract action. Wabash must bear its own attorney fees.

## CONCLUSION

Accordingly, the summary judgment entered by the circuit court against King & Wills in favor of Wabash on counts III (misappropriation of funds) and V (failure to procure insurance) of Wabash's complaint as amended is affirmed. The summary judgment entered by the circuit court against Wabash and in favor of King & Wills on count IV (deceptive trade practices) on Wabash's complaint as amended is affirmed. The circuit court's denial of Wabash's attorney fees is affirmed.

Affirmed.

GOLDENHERSH and WELCH, JJ., concur.