12/27/96







1-96-0075

ANDREW LETSOS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellant, ) Cook County.
 )
 v. ) 
 ) 
CENTURY 21-NEW WEST REALTY, and ) 
ALEX BRUSHA, ) Honorable 
 ) David Lichtenstein, 
 Defendants-Appellees. ) Judge Presiding.


 PRESIDING JUSTICE HARTMAN delivered the opinion of the court: 

 Plaintiff, Andrew Letsos, contracted to sell property to his
real estate broker, defendant Alex Brusha, after listing the
property for sale with Brusha for one and one-half years without
success. After executing the contract, but before closing, Brusha
found a buyer for himself and resold the property for a profit. 
Letsos sued Brusha and Brusha's alleged employer, defendant Century
21-New West Realty (Century 21). The circuit court granted summary
judgment in favor of both defendants. Letsos alleges both
defendants breached their fiduciary duties to him by failing to
disclose that they had found a buyer, and that Century 21 is
vicariously liable for Brusha's actions.
 The issues identified by Letsos for appeal include whether (1)
a real estate brokerage company, and a real estate salesman who
works for the company, owed a fiduciary duty to the owner of real
property after the expiration of a listing agreement between the
parties; (2) a principal-agency relationship existed between the
real estate brokerage company and the real estate salesman,
rendering the company vicariously liable for the acts of the
salesman; and (3) the company and the salesman breached a fiduciary
duty to the owner when the salesman purchased property from the
owner and immediately resold it for a profit, without telling the
owner before the closing that he had found a willing buyer. 
 The facts of this case, construed most favorably to Letsos,
and most strictly against Brusha and Century 21 (Gatlin v. Ruder,
137 Ill. 2d 284, 293, 560 N.E.2d 586 (1990)), are set forth in the
following paragraphs. 
 On June 15, 1990, Letsos, who owned several parcels of
property, entered into a three-month listing agreement with New
West Associates, Inc. (New West), giving New West exclusive
authority, over a three-month period, to sell Letsos' property
located at 931 South Bell Street (Bell property) for $229,000, for
which Letsos agreed to pay a six percent commission. After the
listing agreement expired, Letsos entered into another contract
with New West, which by then had been renamed New West Realty,
Inc., doing business as Century 21-New West Realty.
 Each time the listing agreement expired, Letsos signed a new
agreement with Century 21. Between June 15, 1990, and September
16, 1992, Letsos entered into eight consecutive listing agreements
for the Bell property and, when Century 21 could not find a buyer,
the asking price was lowered several times. In the final listing
agreement, signed on September 16, 1992, Letsos set the asking
price at $129,000.
 Letsos' contact person at Century 21 was Brusha, a real estate
salesman licensed by the State of Illinois who worked for New West
and Century 21 since 1988. An employment contract Brusha signed
with Century 21 outlined his obligations as a salesperson. An
extensive rider to the contract stated that Brusha would be
considered an independent contractor. It also provided that Brusha
would receive a commission when Brusha closed a sale of property. 
All commissions would be payable to Century 21, which would keep a
portion of the commissions Brusha earned. Brusha would be
compensated only from the commissions earned from selling property,
but did not receive a salary. Century 21 also allowed Brusha to
use its office space and a telephone free of charge. Century 21
would not monitor Brusha's daily activities or require him to work
a specific number of hours. 
 Letsos first spoke with Brusha in the summer of 1990, after
calling a telephone number he saw on a sign in the front of a
Century 21 office. He met with Brusha to see if Brusha could help
him sell some property he owned. They walked through several
buildings owned by Letsos and calculated selling prices. Letsos
showed Brusha the Bell property, which consisted of a two-flat that
Letsos recently finished renovating. Brusha agreed to try to find
a buyer, and a listing agreement was executed.
 Brusha had exclusive authority to sell Letsos' Bell property
pursuant to the multiple listing agreements in effect from 1990 to
1992. Each time a listing agreement expired, Brusha assured Letsos
that he found a potential buyer, and convinced him to sign a new
agreement. The last listing agreement expired on December 15,
1992. Letsos could not remember whether Brusha asked him to sign
a new agreement, but planned to sign another contract with Brusha
and expected Brusha to continue to act as his representative with
regard to the Bell property. Brusha acknowledged that he continued
to serve as Letsos' broker after the listing agreement expired.
 Soon after the expiration of the last agreement, Brusha sold
another parcel of property owned by Letsos. At the closing of that
sale, Brusha spoke with Letsos, offering to buy the Bell property
for himself for $88,000. Brusha previously had mentioned
purchasing the property during casual conversations and believed
the Bell property had not been sold because it "didn't show well": 
the exterior needed to be landscaped and the tenants did not keep
their apartments clean. Letsos claimed Brusha told him that after
buying the Bell property, he would spend a year fixing it up, and
would then sell the property. Brusha acknowledged only that he
told Letsos he planned to resell the property after purchasing it. 
 On March 9, 1993, Letsos and Brusha signed a contract for the
sale of the Bell property to Brusha for $92,000, with the closing
to take place in two months. The agreement named Century 21 as the
listing broker, to whom Letsos would pay a commission that equalled
five percent of the purchase price, or $4,600. Brusha would
receive a portion of this commission. Century 21 also acted as the
escrow agent, holding the initial earnest money paid by Brusha.
 Some time in March 1993, Brusha met Anthony Hernandez through
another broker. In May, Brusha and Hernandez contracted for the
sale and purchase of the Bell property for $115,000. Brusha was
required to obtain title to the property before July 27, 1993 and
to make small improvements to the property, which cost several
hundred dollars. Brusha denied meeting Hernandez before he signed
the March 9, 1993 contract with Letsos. 
 Letsos and Brusha scheduled their closing for May 10. Brusha
delayed the closing several times; according to Letsos, Brusha said
he needed more time to obtain a bank loan for the purchase. The
closing between Letsos and Brusha finally occurred in mid-July,
1993. Letsos then left for a vacation in Greece. After the
closing, Letsos' real estate attorney called Brusha, asking him for
money owed Letsos. Brusha told the attorney he was reselling the
property. The Brusha-Hernandez closing took place on August 2,
1993, which Letsos' attorney attended. 
 When he returned from Greece and was told about the subsequent
sale to Hernandez, Letsos filed a complaint against Brusha and
Century 21, alleging that both defendants breached fiduciary duties
owed him by failing to disclose the Brusha sale to Hernandez, and
seeking $30,000 in compensatory damages and $50,000 in punitive
damages. Century 21 unsuccessfully moved to dismiss the complaint,
claiming it owed no fiduciary duty toward Letsos because the
listing agreement expired before the parties entered into a
contract for the sale of the Bell property. Century 21 and Brusha
then filed separate answers to the complaint. Letsos moved for
partial summary judgment, asserting that no party disputed the
relevant facts, which showed that Brusha never told Letsos he found
a buyer for the property and entered into a second contract for the
sale of the property. Letsos alleged that each defendant owed him
a fiduciary duty, and requested the court to rule as a matter of
law that defendants breached this duty by failing to disclose
material information.
 In response, Century 21 argued that it was not a party to the
real estate contract between Brusha and Letsos, did not profit from
the sale, did not breach any fiduciary duty because the listing
agreement expired, and because the doctrine of equitable conversion
gave Brusha equitable title to the property when the parties signed
the contract on March 9. In addition, Century 21 brought a cross-
motion for summary judgment, asserting that for the reasons stated
in its response, the court should rule as a matter of law that
Century 21 could not be liable. Alternatively, Century 21
contended that if Brusha were found liable to Letsos, Brusha worked
as an independent contractor, and Century 21 therefore should not
be liable for his actions. Century 21 later filed a separate
motion for summary judgment, where it stated identical allegations.
 Brusha also filed a response to Letsos' summary judgment
motion. Brusha asserted that Letsos could not prove Hernandez was
a prospective buyer before the parties signed the purchase
agreement, pointing to his uncontested deposition testimony that he
met Hernandez after signing the contract with Letsos. He asserts
that he had no duty to disclose information he received after
signing the real estate sales contract but before the closing took
place.
 Letsos twice amended his complaint. Count one of the second
amended complaint, filed after his motion for partial summary
judgment, alleged that Brusha owed Letsos a fiduciary duty as his
broker, which was breached by failing to disclose to Letsos that he
found a buyer. Count two alleged that Brusha was an agent for
Century 21, Century 21 had a duty to supervise Brusha's actions, 
and Century 21 breached this duty by allowing Brusha to purchase
the property without making any disclosures to Letsos. Letsos
requested $27,000 in compensatory damages (the $23,000 profit
earned by Letsos on the resale of the Bell property, plus a portion
of the $4,600 commission Letsos paid Century 21), and $25,000 in
punitive damages.
 The circuit court held a hearing to decide the motions. The
transcript of the hearing has not been made part of the record, but
was added as an appendix to Letsos' brief. The transcript itself
refers to the court presiding over previous hearings; the record
contains no transcripts of hearings and refers to no hearings. In
the transcript, the circuit court made no findings, but stated
simply that for the reasons stated best in Century 21's motion, it
would grant defendants' motions for summary judgment and deny
plaintiff's motion. The court then issued an order in accordance
with this ruling. Letsos appeals.
 Motions for summary judgment may be granted where the
pleadings, depositions, exhibits, and affidavits reveal no genuine
issue of material fact and the moving party is entitled to judgment
as a matter of law. 735 ILCS 5/2-1005(c) (West 1994); Young v.
Lemons, 266 Ill. App. 3d 49, 51, 639 N.E.2d 610 (1st Dist. 1994). 
When determining whether the circuit court properly granted a
motion for summary judgment, review is de novo. Zoeller v.
Augustine, 271 Ill. App. 3d 370, 374, 648 N.E. 2d 939 (1995). All
evidence is construed in the light most favorable to the nonmoving
party, and strictly against the moving party. Gatlin, 137 Ill. 2d
at 293; Soderlund Brothers, Inc., v. Carrier Corp., 278 Ill. App.
3d 606, 614, 663 N.E.2d 1 (1996). Reversal is warranted where
review reveals the existence of material issues of fact or
erroneous interpretations of law. Zoeller, 271 Ill. App. 3d at
374. 
 I
 Letsos argues that although the listing agreement with Letsos
and Century 21 expired in December 1992, the conduct of the parties
shows that Century 21 and Brusha continued to act as Letsos' agent
with regard to the Bell property. As a result, Letsos contends,
both defendants owed him a fiduciary duty. Letsos points out that
defendants each received a commission on the sale of the property
at the time of closing. Century 21 insists that its obligations
toward Letsos ended in December 1992 with the listing agreement. 
Furthermore, Century 21 contends that once this listing agreement
expired, it could negotiate with Letsos at arm's length and receive
a commission on the sale. Century 21 claims it was entitled to the
commission pursuant to an employment agreement with Brusha, which
allows Century 21 to receive portions of all commissions Brusha
receives. 
 A real estate broker serves as an agent of the owner of
property, who bargains or negotiates on behalf of his principal in
relation to the purchase or sale of property. Munjal v. Baird &
Warner, Inc., 138 Ill. App. 3d 172, 181, 485 N.E.2d 855 (1985);
Plastics & Equipment Sales Co. v. DeSoto, Inc., 91 Ill. App. 3d
1011, 1015, 415 N.E.2d 492 (1980). Generally, the terms of a
brokerage contract or listing agreement determine the rights and
obligations of a broker. Bennett & Kahnweiler, Inc. v. American
National Bank & Trust Co., 235 Ill. App. 3d 896, 905, 601 N.E.2d
810 (1992). A contract employing a real estate broker, however,
does not have to be in writing. In re Estate of Vallerius, 253
Ill. App. 3d 226, 230, 624 N.E.2d 459 (1993). All that is required
is action by the broker and consent by the principal. Consent may
be oral, written, or implied by the conduct of the parties. Walsh
v. Fanslow, 123 Ill. App. 3d 417, 422, 462 N.E.2d 965 (1984).
 There was evidence in this case from which a factfinder could
determine the existence of an agency relationship with regard to
both defendants, even after the expiration of the listing agreement
in December 1992. Letsos and Brusha discussed the sale of the Bell
property after December, and Brusha continued to represent Letsos
in attempting to find a buyer for the property. Letsos stated that
after the last listing agreement expired, he expected Brusha to
remain his broker and assumed he would renew that agreement at some
point. Brusha himself admitted that he remained Letsos' broker
after the expiration of the listing agreement. Therefore, although
no written agreement existed, the conduct of the parties evidences
an intent to continue the owner-broker relationship.
 In addition, Century 21 expressly indicated that it considered
itself an agent of Letsos by naming itself as a broker in the real
estate sales contract between Letsos and Brusha, and by receiving
a commission from that sale of the Bell property. The language of
the real estate sales contract between Letsos and Brusha
contradicts Century 21's statement that it received the commission
through Brusha rather than independently from Letsos. The contract
names Century 21, not Brusha, as the listing broker and states that
the seller must pay the broker a commission of five percent of the
sales price. The contract obligated Letsos to pay the commission
directly to Century 21, not to Brusha, and made no reference to any
agreement between Century 21 and Brusha.
 Significantly, if Century 21 were not Letsos' agent, it would
not have been entitled to receive a commission from Letsos because
absent a contract between a broker and the owner of the property,
the latter has no obligation to compensate the broker. Wilmette
Real Estate & Management Co. v. Luvisi, 172 Ill. App. 3d 232, 236,
526 N.E.2d 477 (1988); Arthur Rubloff & Co. v. Drovers National
Bank of Chicago, 80 Ill. App. 3d 867, 871, 400 N.E.2d 614 (1980). 
Brusha's deposition testimony reveals that he also received a
portion of the commission for his services as broker in the sale to
himself. Neither Century 21 nor Brusha can claim the benefits of
a principal-agency relationship by receiving a broker's commission,
and later deny the existence of that relationship. Rieger v.
Brandt, 329 Ill. 21, 28-29, 160 N.E.130 (1928) (Rieger); Sams v.
Rigg, 339 Ill. App. 25, 88 N.E.2d 673 (1949).
 A factfinder reasonably could conclude that both Century 21
and Brusha acted as agents of Letsos even after the listing
agreement expired. If so, they would therefore owe Letsos a
fiduciary duty each time the parties contracted for the sale of the
Bell property. Summary judgment was improperly entered on this
issue, and the cause must be reversed and remanded for trial.
 II
 Letsos next contends that Century 21, Brusha's employer, is
vicariously liable for Brusha's misconduct. Century 21 counters
that it cannot be held liable because Brusha was an independent
contractor, rather than an employee, which Letsos disputes,
asserting that Brusha acted with the apparent authority of Century
21.
 A factfinder could conclude that the conduct of the parties
established that Brusha's actions were as an agent of Century 21
despite the independent contractor language contained in his
employment agreement. The record can be interpreted to show that
Brusha acted with the apparent authority of Century 21, and Century
21, therefore, is liable for the acts of Brusha.
 An agency relationship engenders a type of fiduciary
affiliation in which the principal has the right to control the
conduct of the agent, and the agent has the power to act on behalf
of the principal. State Security Insurance Co. v. Frank B. Hall &
Co., 258 Ill. App. 3d 588, 595, 630 N.E.2d 940 (1994). Once an
agency relationship is found, a fiduciary relationship arises as a
matter of law. State Security, 258 Ill. App. 3d at 595.
 An agent's authority may be actual or apparent; if it is
actual, it may be express or implied. Granite Properties Limited
Partnership v. Granite Investment Co, 220 Ill. App. 3d 711, 713-14,
581 N.E.2d 90 (1991). Apparent authority arises when the principal
holds an agent out as possessing the authority to act on its
behalf, and a reasonably prudent person, exercising diligence and
discretion, would naturally assume the agent to have this authority
in light of the principal's conduct. Gilbert v. Sycamore Municipal
Hospital, 156 Ill. 2d 511, 523, 622 N.E.2d 788 (1993). The
doctrine of apparent authority is based on the notion that if a
principal creates the appearance that a party is its agent, it will
not be permitted to deny the agency if an innocent third party
reasonably relied on the apparent agency, and is harmed as a
result. O'Banner v. McDonald's Corp., 173 Ill. 2d 208, 213, 670
N.E.2d 632 (1996) (O'Banner). To prove the existence of apparent
authority, the proponent must show: (1) the principal consented to
or knowingly acquiesced in the agent's exercise of authority; (2)
based on the actions of the principal and agent, the third person
reasonably concluded that the party was an agent of the principal;
and (3) the third person justifiably relied on the agent's apparent
authority to his detriment. Gilbert, 156 Ill. 2d at 525; Wabash
Independent Oil Co. v. King & Wills Insurance Agency, 248 Ill. App.
3d 719, 724, 618 N.E.2d 1214 (1993).
 Century 21 insists that Brusha cannot be considered its agent
because the language of Brusha's employment agreement repeatedly
and explicitly referred to him as an independent contractor. 
Generally, one who engages the services of an independent
contractor is not liable for the acts or omissions of that
contractor. Jessee v. Amoco Oil Co., 230 Ill. App. 3d 337, 342,
594 N.E.2d 1210 (1992). Whether the parties' relationship is that
of principal and agent or owner and independent contractor,
however, is a question of fact unless the relationship is so clear
that it is indisputable. Wabash, 248 Ill. App. 3d at 723. In
addition, a party may be both an independent contractor and an
agent for another. Sobel v. Franks, 261 Ill. App. 3d 670, 679, 633
N.E.2d 820 (1994).
 Specific conduct on the part of both Brusha and Century 21
inferentially demonstrated the existence of a principal-agency
relationship, despite evidence that the parties intended an
independent contractor relationship. Century 21 "consented to or
knowingly acquiesced in" Brusha's exercise of authority. Century
21 provided Brusha with an office, telephone, office furniture, and
supplies. All listing agreements were in the name of Century 21. 
Furthermore, Brusha, on behalf of Century 21, persuaded Letsos to
enter into these agreements. Sufficient evidence of the three
elements of apparent agency revealed that Century 21 could be
considered to have held Brusha out as an employee and that Letsos
reasonably and in good faith could have believed that Brusha was an
agent of Century 21, and justifiably relied to his detriment on
this belief. Letsos originally became acquainted with Brusha by
calling a telephone number he saw on a Century 21 sign outside its
offices. All the listing agreements Letsos signed were in the name
of Century 21. Brusha worked out of the Century 21 offices. These
specific acts of conduct could support a reasonable belief by a
factfinder that Brusha was an agent of Century 21. In addition,
Letsos could have relied on this appearance of agency to his
detriment, in that he believed Century 21 more closely monitored
Brusha's activities and had no reason to believe Brusha worked
independently of Century 21. Brusha therefore can be considered an
agent of Century 21, and Century 21 can be held liable for Brusha's
wrongful conduct.
 Century 21 misinterprets the O'Banner decision when it
suggests that the decision requires plaintiffs specifically to
allege justifiable reliance in their complaint to recover under an
apparent agency theory. In O'Banner, the court briefly discussed
the doctrine of apparent agency and noted that the doctrine applied
when a third party reasonably relies on an apparent agency
relationship and is harmed as a result. O'Banner, 173 Ill. 2d at
213. The court did not require that plaintiff specifically allege
each element of the apparent agency doctrine. In the present case,
Letsos pled facts alleging the existence of a principal-agency
relationship between Century 21 and Brusha. A factfinder could
believe that he subsequently proved this allegation through direct
evidence showing the existence of an apparent agency. Summary
judgment should not have been entered on this issue and the cause
must be reversed and remanded for trial for this reason as well.
 III
 Brusha asserts that he owed no duty to disclose his dealings
with Hernandez after the parties signed the Letsos contract. 
Century 21 similarly insists that any fiduciary duty it owed Brusha
did not include the duty to disclose.
 The fiduciary relationship between a broker and a principal
requires full disclosure of all material facts relating to the
relevant transaction or affecting the subject matter of the agency. 
Sawyer Realty Group, Inc. v. Jarvis Corp. 89 Ill. 2d 379, 385, 432
N.E. 2d 849 (1982); Moehling v. W.E. O'Neil Construction Co., 20
Ill. 2d 255, 267, 170 N.E.2d 100 (1960). Facts are considered
material if they would likely influence the principal's beliefs
regarding the desirability of the transaction. Jeffrey Allen
Industries, Inc. v. Sheldon F. Good & Co., 153 Ill. App. 3d 120,
123, 505 N.E.2d 1104 (1987) (Jeffrey Allen). One who employs an
agent for the sale of land is entitled to all the agent's "skill,
ability, and industry" to make the sale on the best possible terms. 
Jeffrey Allen, 153 Ill. App. 3d at 123. An agent owes general
duties of good faith, loyalty, and trust. Martin v. Heinold
Commodities, Inc., 139 Ill. App. 3d 1049, 1056, 487 N.E.2d 1098
(1985), aff'd in part, rev'd in part, 117 Ill. 2d 67, 77, 510
N.E.2d 840 (1987) (Martin).
 If a broker, as an agent, enters into a contract with the
principal, the same duties of good faith and disclosure of material
facts continue. Martin, 117 Ill. 2d at 77; Moehling, 20 Ill. 2d at
267. Where a fiduciary relationship exists at the time of the
transaction and the dominant party (the broker) appears to benefit,
the transaction is presumptively fraudulent, which may be rebutted
by clear and convincing evidence of good faith, showing that the
broker: (1) fully disclosed all relevant information to the
principal before entering into the transaction; (2) paid adequate
consideration; and (3) provided competent and independent advice to
the principal. Glass v. Burkett, 64 Ill. App. 3d 676, 680-81, 381
N.E.2d 821 (1978) (Glass).
 Where the broker learns of another buyer before entering into
the contract, the broker must inform the principal of the buyer's
offer. Pittsburgh Equitable Meter Co. v. Paul C. Loeber & Co., 160
F.2d 721, 725 (7th Cir. 1947) (Pittsburgh); Rieger, 329 Ill. at 28;
Glass, 64 Ill. App. 3d at 681. In Rieger, defendant, a broker,
offered to buy plaintiff's property and informed plaintiff that
other potential buyers were willing to pay the same amount. The
broker did not mention, however, that at least one buyer was
willing to pay a higher price. Instead, the broker resold the
property to the other buyer at the higher price, earning a profit. 
329 Ill. at 26-27. The supreme court held that defendant breached
his duty by failing to disclose the better offer to plaintiff. 329
Ill. at 29. 
 The court in Rieger also noted that the defendant broker
himself deemed the agency as continuing where, as in the case at
bar, he received a broker's commission for the sale, after the
contract to purchase for himself (and others) was executed, the
court observing that "[a]n agent cannot terminate the agency for
one purpose and recognize it for another." 329 Ill. at 28. To the
same effect is Sams v. Rigg, 339 Ill. App. 25, 88 N.E.2d 673 (1949)
(Sams). There, the appellate court affirmed a circuit court
decision which held that the defendant broker who failed to
disclose the sale of the principal's property at a price higher
than that reported could not claim the agency terminated where he
received a commission for broker's services rendered thereafter,
among other reasons. Similarly, in Glass, the defendant broker was
held to have breached his duty to plaintiffs by failing to inform
them of a better offer before purchasing the property from
plaintiffs. Glass, 64 Ill. App. 3d at 682.
 Century 21 contends that after Brusha and Letsos executed the
real estate sales contract, any duty to disclose other buyers
terminated because the contract gave Brusha equitable title to the
property, allowing him to retain or to sell his interest in the
property as he wished. 
 The doctrine of equitable conversion to which Century 21
refers provides that when the owner of real property enters into a
valid and enforceable sale of that property, he continues to hold
legal title, but in trust for the buyer. The buyer becomes the
equitable owner of the property at the time of the contract. The
doctrine will not be applied, however, where it interferes with
other equitable considerations or violates the intentions of the
parties. Eade v. Brownlee, 29 Ill. 2d 214, 217, 193 N.E.2d 786
(1963); Hartman v. Hartman, 11 Ill. App. 3d 524, 527-28, 297 N.E.2d
199 (1973). Similarly, the doctrine does not apply if it would
circumvent or avoid established principles of law and public
policy. Chandler v. Chandler, 64 Ill. App. 3d 97, 99, 381 N.E.2d
37 (1978).
 Application of the doctrine of equitable conversion here would
violate the intentions of the parties. There was evidence that 
Letsos still considered Brusha as his broker even after he
contracted to sell the property to Brusha, a fact Brusha
effectively concedes, as does Century 21, in having pursued their
broker's commissions of $4,600 through July 1993, the date of
closing. The contract of sale between Brusha and Hernandez was
executed on May 29, 1993, a time during which Brusha was still
Letsos' broker. Rieger; Sams; Glass. 
 Brusha's relationship to Letsos, principal-agent, maintained
their fiduciary relationship requiring full disclosure. Sawyer
Realty, 89 Ill. 2d at 385. He bore the duty of good faith and
loyalty towards Letsos, which prohibited him from discharging
duties of his position in such a manner as to make a secret profit
for himself. Martin, 117 Ill. 2d at 77. Because of Brusha's
confidential relationship to Letsos, his duty was to disclose to
his principal every fact, circumstance, or advantage in relation to
the sale which may come to his knowledge. Jeffrey Allen, 153 Ill.
App. 3d at 123.
 A broker can neither purchase from, nor sell to, his principal
unless the latter expressly assents thereto or, with full knowledge
of all the facts and circumstances, acquiesces in such transaction. 
Even when the principal gives his assent to a purchase or sale by
the broker, the latter's actions throughout must be characterized
by the utmost good faith. Glass. In the event of any litigation
between him and his employer, the burden is upon the broker to
prove both the permission and the exemplary manner in which he
availed himself of it, since it is inconsistent for one to act as
principal in his own behalf at the same time he is duty bound to
act as the agent of another. Spindler v. Krieger, 16 Ill. App. 2d
131, 147 N.E.2d 457 (1958); Pittsburgh; Rieger. 
 Defendants in the case sub judice never informed Letsos that
Hernandez was willing to pay $115,000 for the property, and that
Brusha had signed a contract to sell his interest in the property
for $115,000. Brusha's fiduciary duty required him to disclose to
Letsos all material facts, such as his contract with Hernandez. 
Brusha's fiduciary duty further required him not to deal for his
own advantage, and make a profit of $23,000, undisclosed to Letsos.

 IV
 With respect to remedy, an agent is entitled to compensation
only upon faithful performance of all his duties to the principal. 
The misconduct of the agent affects the contract of agency from
considerations of public policy rather than of injury to principal. 
Steinmetz v. Kern, 375 Ill. 616, 621, 32 N.E.2d 151 (1941). One
who breaches fiduciary duties has no entitlement to compensation
during a willful or deliberate course of conduct, adverse to the
principal's interests. ABC Trans National Transport, Inc. v.
Aeronautics Forwarders, Inc., 90 Ill. App. 3d 817, 413 N.E.2d 1299
(1980). 
 In the instant case, the defendants-brokers may be found to
have breached their fiduciary duties owed to Letsos, through their
secret dealings with Hernandez. They may be required to return the
$4,600 broker's fee they received from Letsos for obtaining a sale
of property to themselves as a penalty for their willful violation
of their fiduciary duty. Martin. Further, Brusha, if found to
have breached his fiduciary duty to Letsos, made a profit of
$23,000. The breach could be deemed willful and Letsos may be
entitled to the return of the profits made in the sale, $23,000.
 Under common-law principles of respondeat superior, a
principal is liable for deceit of its agent, if committed in the
very business the agent was appointed to carry out, even where the
agent's specific conduct was carried out without knowledge of the
principal. Commodities Futures Trading Commission v. Premex, Inc.,
655 F.2d 779, 784 (7th Cir. 1981). One who puts a servant or other
agent in a position which enables the agent, while apparently
acting within his authority, to commit fraud upon third persons,
also is subject to liability to such third persons for fraud. 
Bachmeier v. Bank of Ravenswood, 663 F. Supp. 1207 (N.D. Ill.
1987).
 Brusha could be found to have been Century 21's salesman; the
commission he secured was payable to Century 21; and Century 21
received the $4,600 commission through Brusha's purchase of the
property from Letsos. Century 21 also received a $1,053 commission
in Brusha's sale of the property to Hernandez. It was shown as the
broker on the March 9, 1993 contract, and collected the commission. 
It too, could be found to have breached its fiduciary duty to
Letsos in not disclosing the existence of the Hernandez contract. 

 Summary judgment in this case was erroneously granted to
Brusha and Century 21. Material questions of fact abound. For the
same reasons, summary judgment could not be entered in Letsos'
favor. This case must be and is reversed and remanded for trial.
 Reversed and remanded for trial.
 DiVITO and BURKE, JJ., concurring.