EVERETT LANDRUS, Plaintiff-Appellant, v. EAGLE WINGS INDUS-TRIES, INC., Defendant-Appellee.

Fourth District No. 4—92—0368

Opinion filed October 22, 1992.—Rehearing denied December 14, 1992.

John T. Papa, of Callis Law Firm, P.C., of Granite City, for appellant.

Karen L. Kendall and Bradley S. McMillan, both of Heyl, Royster, Voelker & Allen, of Peoria, and James C. Kearns and Edward M. Wagner, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

This is a personal injury action premised on allegations of negligence. Plaintiff Everett Landrus appeals from a summary judgment entered in the circuit court of Champaign County in favor of defendant Eagle Wings Industries, Inc. The only issue raised on appeal is whether defendant owed plaintiff a duty which would support a cause of action for negligence.

The injury occurred on Sunday, April 9, 1989, at defendant's manufacturing facility in Rantoul, Illinois. Plaintiff, who was not an employee of defendant, received an injury to his hand while riding on a forklift operated by Kenny Heimberger (Heimberger), an employee of defendant. At the time of the incident, the manufacturing facility was closed.

At the time of the incident, defendant's plant was being prepared for operations. Cardinal Construction Company (Cardinal) was uncrating robots and equipment for installation. The emptied wooden crates were placed inside and outside the building.

Heimberger, his cousin Rob, and plaintiff went to the facility that day for the purpose of removing scrap lumber which had accumulated as a result of the crates being discarded after the equipment shipped

to the facility had been removed. Heimberger testified at his deposition that he was a material handler. His duties included driving the forklift, and he received formal training as an operator of the forklift. Heimberger obtained permission from Jim Quaak, defendant's vice-president of manufacturing, to remove the lumber and to use the forklift. He testified Cardinal would have had to haul the lumber away. Heimberger's testimony as to who would have paid for the removal of the lumber in the event Cardinal removed it is less than clear. Heimberger did not testify to a knowledge of the contractual relationship between Cardinal and the defendant. On April 9, 1989, they drove a truck belonging to Rob Heimberger (Rob) onto the premises. They also used a trailer. Rob was not an employee of defendant. While placing the load of wood onto the trailer, plaintiff got on top of the wood in order to balance the load. After the load was set into the trailer, plaintiff stepped onto the forks to ride down. Heimberger had seen other persons ride on the forks of a forklift several times while he worked construction. He had seen this done before. As Heimberger lowered the lift, plaintiff's hand got caught between the masts, causing the injury for which recovery was sought.

Heimberger had initially approached Quaak about the scrap lumber and asked if he could "get some wood and if he could get some help to get the wood." Quaak said there was no problem and placed no restrictions on the permission. Heimberger did not have unrestricted access to the facility on April 9, only permission to get and use the forklift. The scrap wood that was being removed that morning was for the personal benefit of the persons removing it. This was not part of Heimberger's job, and he was not paid. Plaintiff was going to get some of the wood.

The deposition testimony of Rob Heimberger and plaintiff was consistent with that of Kenny Heimberger. Plaintiff stated he was going to use the wood for firewood and pens for his game birds. When asked why they went on a Sunday, plaintiff responded, "Kenny called and said he had, they had stacked a lot of that wood outside and he wanted to get it out of there, and I was busy Saturday so I said how about Sunday and he said that would be okay." The plaintiff's testimony was that Heimberger had indicated the wood was being saved for them and there was quite a bit of scrap wood piled there.

The allegations of negligence contained in plaintiff's complaint were as follows:

> "Defendant, by and through its agent and employee, and at said time and place, was guilty of one or more of the following negligent acts or omissions:

a) Negligently and carelessly operated the forklift in such a way as to injure Plaintiff;

b) Negligently and carelessly failed to furnish a reasonably safe place for Plaintiff to work;

c) Negligently and carelessly failed to equip the forklift with clear, explicit and correct instructions and warnings concerning proper use of the forklift;

d) Negligently and carelessly invited and permitted the Plaintiff to ride the forklift when it knew, or in the exercise of reasonable care should have known, this would result in harm to the Plaintiff;

e) Negligently and carelessly trained and instructed its employees in the safe operation of the forklift ***."

In *University of Illinois v. Continental Casualty Co.* (1992), 234 Ill. App. 3d 340, 343, this court reiterated the general principles regarding summary judgment as follows:

"While summary judgment facilitates the prompt disposition of lawsuits, it is a drastic remedy allowed only when the moving party's right to it is clear and free from doubt. In determining the propriety of granting summary judgment, the trial court should construe pleadings, depositions, admissions, exhibits, and affidavits strictly against the movant and liberally in favor of the respondent. Although inferences may be drawn from undisputed facts, an issue should be decided by the trier of fact and summary judgment denied where reasonable persons could draw divergent inferences from the undisputed facts. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 357-59, 543 N.E.2d 1304, 1307-08.) In reviewing the granting of summary judgment, the role of the reviewing court is to determine if the trial court correctly ruled that no genuine issue of material fact exists, and if none exists, whether judgment was correctly entered for the moving party as a matter of law. (*O'Hara v. Holy Cross Hospital* (1989), 185 Ill. App. 3d 694, 699, 542 N.E.2d 11, 14, *aff'd* (1990), 137 Ill. 2d 332, 561 N.E.2d 18.)

'The entry of summary judgment is not a matter within the discretion of the trial court. In reviewing a trial court's ruling on a motion for summary judgment, the appellate court should consider anew the facts and law related to the case and determine whether the trial court was correct.' (*Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167.)"

In the case at bar, the trial court found there was no genuine issue of material fact and that defendant owed no duty to plaintiff.

In *Widlowski v. Durkee Foods* (1990), 138 Ill. 2d 369, 373, 562 N.E.2d 967, 968, the Illinois Supreme Court stated as follows:

> "A complaint for common law negligence must set forth the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from that breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541.) A duty requires a person to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554.) Whether a duty exists, *i.e.*, whether the defendant and the plaintiff stood in such a relationship to one another where the defendant is obliged to conform to a certain standard of conduct for the benefit of the plaintiff, is an issue of law that must be resolved by the court. *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140."

 The determination of duty resolves itself if the plaintiff's theory of liability is correct. The only theory of liability plaintiff presents on appeal is that defendant is vicariously liable for the negligent acts of Kenny Heimberger under the doctrine of *respondeat superior*.

> "Under the doctrine of *respondeat superior*, an employer may be liable for the negligent, wilful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer. However, the employer is not liable to an injured third party where the acts complained of thereby were committed solely for the benefit of the employee. *Webb v. Jewel Cos.* (1985), 137 Ill. App. 3d 1004, 1006, 485 N.E.2d 409." (*Starr v. Leininger* (1990), 198 Ill. App. 3d 622, 623-24, 556 N.E.2d 266, 267-68.)

In *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 359-60, 543 N.E.2d 1304, 1308-09, the Illinois Supreme Court stated:

> "Summary judgment is generally inappropriate when scope of employment is at issue. [Citations.] Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting. *Boehmer v. Norton* (1946), 328 Ill. App. 17, 21, 24.
>
> For an employer to be vicariously liable for an employee's torts under the doctrine of *respondeat superior*, the torts must

have been committed within the scope of the employment. *Darner v. Colby* (1941), 375 Ill. 558, 560, 566-67; *Gomien v. Wear-Ever Aluminum, Inc.* (1971), 50 Ill. 2d 19, 21; [citations].

'No precise definition has been accorded the term "scope of employment" ' (*Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 493), but broad criteria have been enunciated:

'(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, * * *
* * *

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.' (Restatement (Second) of Agency §228 (1958).)
* * *

The burden is on the plaintiff to show the contemporaneous relationship between tortious act and scope of employment. (*Darner v. Colby* (1941), 375 Ill. 558, 560; *Bolwin v. El Kay Manufacturing Co.* (1975), 32 Ill. App. 3d 138, 140.) Proof thereof can be by circumstantial evidence. 57 C.J.S. *Master & Servant* §615(d)(2), at 406 (1948); see *McDonnell v. City of Chicago* (1981), 102 Ill. App. 3d 578, 584."

Section 235 of the Restatement (Second) of Agency states:

"Conduct Not for Purpose of Serving Master

An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed." (Restatement (Second) of Agency §235, at 520 (1958).)

The comments that follow explain the application of this rule:

"*a.* The rule stated in this Section applies although the servant would be authorized to do the very act done if it were done for the purpose of serving the master, and although outwardly the act appears to be done on the master's account. It is the state of the servant's mind which is material. Its external manifestations are important only as evidence. Conduct is within the scope of employment only if the servant is actuated to some extent by an intent to serve his master. However, it is

only from the manifestations of the servant and the circumstances that, ordinarily, his intent can be determined. If, therefore, the servant does the very act directed, or does the kind of act which he is authorized to perform within working hours and at an authorized place, there is an inference that he is acting within the scope of employment.

\* \* \*

*b. Mixed motives.* The servant may be within the scope of employment, although his departure from instructions in the performance of his work is for his own purposes, if his act is done with the intent to serve his employer. In such case, the rule stated in Section 236 applies.'' (Restatement (Second) of Agency §235, Comments *a, b,* at 520-21 (1958).)

Section 236 of the Restatement (Second) of Agency provides as follows:

"Conduct Actuated by Dual Purpose

Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person." (Restatement (Second) of Agency §236, at 523 (1958).)

Comment *a* following section 236 makes it clear that the person performing the acts may "serve two masters both of whom are interested in the performance of the same act." Restatement (Second) of Agency §236, Comment *a,* at 523 (1958).

■■ The facts indicate Heimberger was operating defendant's forklift and that the operation of the forklift was ordinarily a function of his job. He was operating the forklift on defendant's premises, although at a time when defendant's facility is ordinarily not operating. Defendant's vice-president of manufacturing had given Heimberger permission to operate the forklift at that time and for the purpose of removing the wood. The removal of the wood did benefit plaintiff and Heimberger, but it could be argued it also benefitted defendant in that defendant may have had to make the arrangements for the removal of the wood and to pay for its removal. Heimberger's testimony with regard to the contractual obligation between defendant and Cardinal as to who would remove the wood and who would have to pay for it is less than clear. If the wood belonged to Cardinal, as Heimberger testified, then it would seem that the vice-president of manufacturing would have no authority whatsoever to authorize the removal of the wood which did not belong to defendant. In any event, the decisive factor to be considered in determining whether the doctrine of *respondeat superior* applies in this case is whether Heimberger's activities were too little actuated by a purpose to serve

defendant. Under these circumstances, the question of whether Heimberger was acting within the scope of his employment cannot yet be determined as a matter of law.

■■ In support of the summary judgment, defendant also argues that, even if Heimberger was acting within the scope of his employment, defendant did not owe plaintiff a duty because it was not reasonably foreseeable that plaintiff would ride on the forks of the forklift. In light of the earlier discussion of foreseeability as a factor in determining the existence of a duty and the deposition testimony of Heimberger that, in his construction job, he had seen persons ride on forklifts in this manner, the lack of foreseeability argument is meritless. If the trier of fact finds that Heimberger was acting within the scope of his employment, then the likelihood of plaintiff being injured in this fashion is sufficiently foreseeable for the law to require defendant to accept the responsibility for plaintiff's injury.

For the foregoing reasons, the summary judgment of the circuit court of Champaign County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

GREEN, P.J., and KNECHT, J., concur.