Baltazar **LUNA**, Plaintiff,

v.

**Michael J. MEINKE and the City of Chicago, an Illinois Municipal Corporation, Defendants.**

**No. 91 C 4183.**

United States District Court, N.D. Illinois, E.D.

Feb. 22, 1994.

---

James Frederick Carlson, J. Brian Pierce, Pierce & Carlson, Chicago, IL, for Baltazar Luna.

Joseph Roddy, Chicago, IL, for Michael J. Meinke.

Kelly Raymond Welsh, James Patrick McCarthy, Thaddeus S. Machnick, Timothy John Frenzer, Sharon Baldwin, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for City of Chicago, Illinois.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of defendant/cross-claimant City of Chicago ("City") for summary judgment on Count III of plaintiff Baltazar Luna's ("Luna") complaint, and on the City's cross-claim against defendant Michael J. Meinke ("Meinke"). For the following reasons, the motion is granted.

**1286**

*FACTS* [1]

In 1991, Meinke was an employee of the City as a police officer. Meinke's duties as a police officer included driving and protecting the Mayor of the City. The scope of Meinke's duties, however, did not include patrolling and issuing tickets for traffic code violations. The Chicago Police Department did not issue a ticket book to Meinke for purposes of enforcing the traffic law. Moreover, the last time Meinke was required to issue citations for moving violations was approximately four years prior to May 1991.

On May 26, 1991, Meinke attended a social picnic in the State of Wisconsin with his fiancee. Meinke was not in uniform and did not possess a firearm or handcuffs. After the picnic, Meinke drove home with his fiancee, operating his truck southbound on the Edens Expressway ("Edens").

The Edens is an interstate freeway. By agreement between the Chicago Police Department and the Illinois Department of State Police ("IDSP"), interstate freeways are patrolled exclusively by the IDSP. Officers of the Chicago Police Department do not patrol interstate freeways within the City or within neighboring suburban villages, including the Village of Skokie. Chicago Police Department Special Order 91–11 specifically details the jurisdiction of the IDSP and explains that IDSP will enforce all traffic laws on the expressways. *See* City's Exh. C at 2.

While Meinke was driving on the Edens, near Old Orchard Road in the Village of Skokie, he was involved in a minor traffic dispute with Luna. Meinke claims that the traffic dispute started when Luna abruptly changed lanes and slowed his vehicle by braking in front of Meinke's path. Meinke reacted to Luna's driving by pulling ahead and honking his horn. In response, Luna expressed his disagreement by giving him the finger. Subsequently, Luna pulled in front of Meinke's vehicle again and repeatedly activated his brakes.

Luna, on the other hand, claims that Meinke's vehicle was tailgating him and that he changed lanes from the center lane to the right lane. After moving over, Luna claims that Meinke changed lanes and drove behind Luna's vehicle.

During the traffic dispute, Meinke displayed his Chicago Police Department badge and motioned Luna to pull his vehicle to the side of the road. Luna complied with Meinke's instruction. Meinke also stopped his vehicle on the shoulder of the Edens. When the parties pulled over to the side of the freeway, they were still in the Village of Skokie. Meinke believed that Luna operated his motor vehicle recklessly in violation of 625 ILCS 5/11–503.

After Luna alighted from his vehicle, Meinke approached him and demanded Luna to produce his driver's license and insurance card. During this time, Luna's friends who were driving separate vehicles also pulled over to the side of the road. Luna complied and produced his driver's license, and as he attempted to retrieve his insurance card from the glove compartment, Meinke kicked Luna in the lower back several times and then punched Luna in his face several times with closed fist.

Subsequently, Meinke ordered Luna and his friends to follow him to the Skokie Police Department so that he could request the Skokie Police to issue a citation for reckless driving. Luna and his friends did not follow Meinke. Instead, Luna's friends summoned an ambulance seeking medical attention for Luna. After receiving medical treatment, Luna signed a misdemeanor complaint for simple battery against Meinke. Meinke pleaded guilty to the charge of battery and stipulated to the underlying facts.

1. The following facts are drawn from the City's statement of uncontested facts submitted in accordance with Rule 12(m) of the Rules of the United States District Court for the Northern District of Illinois ("Local Rules") and Meinke's Local Rule 12(n) statement of additional facts in opposition to the City's motion for summary judgment. Luna did not file a response to the City's statement of uncontested facts or submit a Rule 12(n) statement providing additional facts. Furthermore, Luna did not file a responsive pleading to the City's motion for summary judgment. Pursuant to Local Rule 12(n), the City's facts as they are set forth in its statement are deemed admitted for purposes of this motion.

As a result of the physical abuse, Luna filed a three-count complaint for personal injury against Meinke and the City. Count I is a state tort claim against Meinke, Count II is a federal tort claim under 42 U.S.C. § 1983 against Meinke, and Count III is a state tort claim against the City under the doctrine of *respondeat superior.* In response to the allegations against the City, the City filed a cross-claim against Meinke seeking a declaratory judgment that Meinke was not acting within the scope of his employment when he committed a class A misdemeanor offense of battery. The City's motion for summary judgment seeks judgment in favor of the City as to Count III of Luna's complaint and its own cross-claim against Meinke for declaratory judgment.

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that for a party to prevail on a summary judgment motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1440 (7th Cir.1992), a scintilla of evidence in support of the nonmovant's position will not suffice to oppose a motion for summary judgment. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Instead, the nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

■ Moreover, to preclude summary judgment the disputed facts must be those that might affect the outcome of the suit, *First Indiana Bank v. Baker,* 957 F.2d 506, 508 (7th Cir.1992), and a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Lib-*

*erty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The material facts are not in controversy. The determinative issue for this motion is whether Meinke was acting within the scope of his employment when he unlawfully kicked and punched Luna as Luna was attempting to comply with Meinke's demands. The court concludes that Meinke was not acting within the scope of his employment as a Chicago Police officer when he kicked and punched Luna.

■ Generally, when a party sustains injuries or damages as a result of another's wrongful conduct, the injured party must seek redress from the person who caused the damages. *Wabash Independent Oil v. King & Wills Ins.,* 248 Ill.App.3d 719, 188 Ill.Dec. 644, 647, 618 N.E.2d 1214, 1217 (1993). An exception to the general rule has been carved out by the doctrine of *respondeat superior. Id.* The Seventh Circuit defined the doctrine of *respondeat superior* under Illinois law[2] as follows:

> [T]he employer is liable for the negligent, wilful, malicious or criminal acts of its employees when such acts are committed during the course of employment and in furtherance of the business of the employer; but when the act is committed solely for the benefit of the employee, the employer is not liable to the injured third party.

*Bremen State Bank v. Hartford Accident & Indemnity Co.,* 427 F.2d 425, 428 (7th Cir. 1970), *cited with approval in Management Ass'n of Illinois v. Board of Regents,* 248 Ill.App.3d 599, 188 Ill.Dec. 124, 136, 618 N.E.2d 694, 706 (1993).

■ The doctrine of *respondeat superior* does not permit the injured party to hold an employer liable for the employee's wrongdoing in all situations. It is axiomatic in Illinois that "the doctrine of *respondeat superior* applies only when an employee [was] acting within the scope of his employment with respect to the occurrence or transaction that gave rise to [the] injury at issue." *Collier v. Avis Rent A Car System, Inc.,* 248

---

**2.** The parties neither dispute nor raise as an issue that Illinois substantive law will govern Count III of the complaint and the City's cross-claim for declaratory relief against Meinke.

Ill.App.3d 1088, 188 Ill.Dec. 201, 207, 618 N.E.2d 771, 777 (1993). The scope of one's employment is not defined strictly by the employer's instructions to the employee. Even if the agent exceeds the instructions of his or her employer, the employer may be bound by the acts of the employee. *Hartmann v. Prudential Ins. Co. of America,* 9 F.3d 1207, 1210 (7th Cir.1993) (collecting cases). An agent, however, is deemed to have acted outside the scope of his or her employment if the employee commits certain acts "that could not possibly be interpreted as the merely overzealous or ill-judged performance of his duties as agent." *Id.*

■ When scope of employment is at issue, summary judgment is not favored under Illinois law because it is a question of fact. *Landrus v. Eagle Wings Industries, Inc.,* 236 Ill.App.3d 711, 177 Ill.Dec. 746, 749, 603 N.E.2d 816, 819 (1992). Nonetheless, "if no reasonable person could conclude from the evidence that an employee was acting within the course of employment [the court should] hold as a matter of law that the employee was not so acting." *Pyne v. Witmer,* 129 Ill.2d 351, 135 Ill.Dec. 557, 561, 543 N.E.2d 1304, 1308 (1989).

■ Illinois courts have not accorded a precise definition to the term "scope of employment." *Id.* To determine whether an employee was acting within the scope of his or her employment, Illinois courts have considered the following factors enunciated in § 229 of the RESTATEMENT (SECOND) OF AGENCY (1958):

(1) To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

(2) In determining whether ... the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters are to be considered:

(a) whether or not the act is commonly done by such servants;

(b) the time, place, and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether ... the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether ... the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether ... the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether ... the act is seriously criminal.

*Collier,* 188 Ill.Dec. at 207, 618 N.E.2d at 777 (quoting RESTATEMENT (SECOND) OF AGENCY, § 229 (1958)).

Considering the facts of this case in light of the § 229 factors, Meinke was acting outside the scope of his employment as a matter of law. First, Meinke is not authorized to issue citations for traffic code violations, or patrol interstate freeways, or patrol and issue citations in the Village of Skokie. Second, traffic patrol is not incidental to Meinke's duties. Meinke's duties are limited in its scope to driving and protecting the Mayor of the City. At the time Meinke kicked and punched Luna, he was neither driving nor protecting the Mayor of the City. In fact, Meinke was not even working as a police officer on the day in question. Meinke was on his way home from a picnic with his fiancee.

Third, Meinke's conduct at issue is not the conduct "so similar to or incidental to the conduct authorized as to be within the scope of employment...." RESTATEMENT (SECOND) OF AGENCY, § 229 (1958). Meinke did not commonly patrol the interstate freeways and issue tickets to drivers. The City never expected Meinke to patrol and to issue tickets to reckless drivers on the Edens. Stopping Luna on the Edens was a departure from Meinke's assigned duties. Furthermore, Meinke's act of kicking and punching Luna

constituted the crime of battery under Illinois law. From these facts, no reasonable person could conclude that Meinke was acting within the scope of his employment.

In support of the contention that Meinke was acting within the scope of his employment, Meinke asserts that he intended "for Luna to follow MEINKE to the Skokie Police Station so that the Skokie Police might issue a citation to Luna in which MEINKE would sign the citation as a complainant for negligent or reckless driving." Deft.'s 12(n) Stmt. ¶ 1. The court makes no finding as to the motive of Meinke in stopping Luna's travel on the Edens; rather, the court accepts Meinke's version of his reason for pulling Luna over to the side of the road. Nevertheless, Meinke's reason and his intention demonstrate only that he was not acting as a police officer for the City, but was acting as a private citizen making a citizen's inquiry in pulling Luna over to the shoulder of the road, and intending to sign a citation as a private complaining witness. Thus, Meinke's asserted intention does not bring his actions within the scope of his employment with the Chicago Police Department.

## CONCLUSION

For the foregoing reasons, the City's motion for summary judgment on Luna's count III and on its cross-claim against Meinke is granted.

IT IS SO ORDERED.