Curt A. MCCLOUGHAN, Plaintiff,

v.

THE CITY OF SPRINGFIELD, a municipal corporation, and Daniel S. Patterson, Defendants.

No. 99–3104.

United States District Court,
C.D. Illinois,
Springfield Division.

Nov. 20, 2001.

Richard L. Steagall, Charles H. Delano, III, Springfield, IL, Andrew J. Kleczek, Peoria, for Plaintiff.

Robert M. Rogers, William G. Workman, Theodore R. Schullian, D. Peter Wise, Patrick J. Londrigan, Springfield, IL, for Defendants.

## *OPINION*

RICHARD MILLS, District Judge.

Altercation in a tavern parking lot.

Curt McCloughan was injured.

Off-duty Springfield Police Officer Daniel Patterson took certain actions to assist off-duty Springfield Police Officer Jeffrey Tavernor.

Did he do so because Tavernor is his brother-in law or because Tavernor is a fellow Springfield Police Officer?

The jury must answer this question.

Accordingly, summary judgment must be denied.

## I. BACKGROUND

On January 15, 1999, Curt McCloughan went to the Office North Tavern in Springfield, Illinois, to have some drinks with some friends and co-workers. McCloughan arrived at 4:15 p.m., and parked his red 1993 Nissan King Cab pickup truck in the tavern's south parking lot. During the course of the evening, McCloughan consumed several beers.

Beginning at 5:00 p.m., that same day, a private birthday party was being held at the Office North Tavern for Christine Patterson who had turned thirty years old. In attendance at the birthday party were several off-duty City of Springfield police officers including Daniel Patterson (Christine's husband) and Jeffrey Tavernor (Christine's brother). During the course of the evening, Christine Patterson, Daniel Patterson, and Jeffrey Tavernor consumed several beers.

Around 9:00 p.m., Faith Tavernor, who is Jeffrey Tavernor's wife and who was also in attendance at the birthday party, began to leave the bar with her two daughters and one of their daughters' friends. In order to facilitate her exit from the bar, Faith Tavernor pulled her Ford Bronco up to the door of the tavern's beer garden in order to pick up the three children.

Meanwhile, McCloughan also decided to leave the bar. Accordingly, McCloughan returned to his truck and proceeded to back out of his parking space. As McCloughan backed out of his parking space, however, his truck struck the Tavernor's Bronco. Faith Tavernor was seated in the Bronco's driver's seat, Jeff Tavernor was standing outside of the Bronco on the passenger side of the vehicle with the door open speaking with his wife, and the children were entering the Bronco.

After he hit the Tavernor's Bronco, McCloughan began to pull forward. Upon seeing McCloughan pull forward, Jeffrey Tavernor ran towards the truck, identified himself as a Springfield police officer, and reached into the truck through the driver's side window in order to turn off the ignition to keep McCloughan from leaving. Jeffrey Tavernor was initially successful at turning off the truck's engine, but McCloughan was able to restart it. Thereafter, someone pulled Tavernor away from the window of McCloughan's truck.

Although Daniel Patterson heard the collision and saw his in-law's Bronco rocking back and forth, he did not immediately leave the beer garden because he was tending to his wife who was ill due to consuming too much alcohol. Shortly thereafter, however, Daniel Patterson heard yelling from the parking lot and heard Jeffrey Tavernor say, "this guy just hit my truck and now he is trying to

leave." Therefore, Daniel Patterson went to the driver's side window of McCloughan's truck and reached therein in order to retrieve the keys. A struggle then ensued between Patterson and McCloughan, and the two exchanged blows. Thereafter, someone pulled Patterson away from McCloughan's truck before he could retrieve the keys.

Jeffrey Tavernor then went back to McCloughan's truck, opened the door, removed McCloughan, placed him in a headlock, and wrestled him to the ground.[1] Someone pulled Tavernor off of McCloughan, and Mitchell Ruger, who is a Springfield firefighter and who was also in attendance at the birthday party, then kneeled down beside McCloughan as he lay on the ground and said, "why don't we just stay here and see what's going on. Let's get this thing straightened out."

Springfield police officer Robert Fleck, who had witnessed and been involved in the attempts to prohibit McCloughan from leaving the parking lot, also knelt down beside McCloughan and told him to relax because the police were on the way. Fleck had called the police dispatcher, informed the dispatcher that someone had hit Officer Tavernor's Bronco, and asked the dispatcher to send some officers.

As McCloughan was kneeling on the ground, Daniel Patterson walked up to him and kicked him in his neck and head area. Noll Handlin, another off-duty Springfield police officer who was in attendance at the party, then went over to McCloughan and assisted him to his feet. Afterwards, Handlin saw that McCloughan was bleeding from his face around his eye. Patterson then stated, "you're not going to let me hit him again" and also stated that McCloughan deserved it. Handlin responded that,

---

1. In his motion for summary judgment, Patterson contends that Springfield police officer Robert Fleck removed McCloughan from his truck.

"no one deserves this. Just go back inside." McCloughan then asked for someone to call the police. Fleck responded that "we are the cops." Plaintiff retorted, "no, real cops."

Sometime thereafter, Springfield police officer Timothy Ealy, Sergeant Dodson, and Lieutenant Michael Geiger arrived at the Office North Tavern, placed McCloughan under arrest, and ticketed him for driving under the influence of alcohol. Accordingly, the officers transported McCloughan to Saint John's Hospital for treatment for his injuries and then took him to the Sangamon County Jail. On June 1, 2001, McCloughan pleaded guilty to the offense of driving under the influence of alcohol, and the state court sentenced him to one year of court supervision and imposed a $750.00 fine.

On April 14, 1999, McCloughan filed suit in state court as a result of the injuries which he received on January 15, 1999. After the case was removed to this Court, this Court dismissed some of McCloughan's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a cause of action upon which relief can be granted, and McCloughan voluntarily dismissed some of his claims. As it stands today, McCloughan has stated a cause of action under 42 U.S.C. § 1983 against Daniel Patterson for violating his Fourth Amendment right to be free from unreasonable searches and seizures (Count I), has stated a cause of action against Daniel Patterson under state common law for battery (Count II), has stated a cause of action against Daniel Patterson under state common law for willful and wanton conduct (Count III), and has stated a cause of action against the City of Springfield, under a theory of *respondeat superi-*

or, for the battery inflicted upon him by Jeffrey Tavernor and Daniel Patterson. Patterson and the City of Springfield have now moved, pursuant to Federal Rule of Civil Procedure 56(c), for summary judgment on McCloughan's claims against them.[2]

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Ruiz–Rivera v. Moyer,* 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demon-

---

**2.** Technically, Patterson has only moved for summary judgment as to McCloughan's § 1983 claim against him and has asked the Court to decline to exercise jurisdiction over McCloughan's supplemental state law claim against him once the Court grants summary judgment to him on McCloughan's federal claim. 28 U.S.C. § 1367.

strates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir.1997).

## III. ANALYSIS

### A. *PATTERSON*

Patterson argues that he is entitled to summary judgment on McCloughan's § 1983 claim against him for two reasons.

#### 1. *Causation*

*First,* Patterson asserts that he did not cause McCloughan's injuries. Patterson claims that, although he kicked McCloughan, McCloughan sustained his injuries when Fleck and Tavernor pulled him out of his truck. Because he did not cause or participate in the constitutional deprivation alleged by McCloughan, Patterson claims that he is entitled to summary judgment on McCloughan's § 1983 claim.

 The Court believes that a genuine issue of material fact exists as to whether Patterson caused McCloughan's injuries. The United States Court of Appeals for the Seventh Circuit has explained the causation test as follows:

> To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.... [A]n official satisfies the personal responsibility requirement of section 1983 ... if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye....

*Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995) (citations and internal quotations omitted).

In the instant case, Ruger, Fleck, and Brian Brewer (a co-worker of Christine Patterson who was in attendance at the birthday party) each testified that they saw Patterson kick McCloughan in the head. Moreover, in his deposition testimony, Patterson admitted that he hit McCloughan in the face while attempting to remove the keys from his truck. The Court believes that this evidence is sufficient to create an issue of fact for the jury to decide regarding whether Patterson's actions caused McCloughan's injuries.

Patterson makes much of the fact that McCloughan has admitted all of the facts contained in his statement of undisputed facts which he offered in support of his motion for summary judgment. While it is true that McCloughan admitted most all of these facts, it is also true that McCloughan offered evidence which contradicted the facts tendered by Patterson. The Court believes that this situation occurred because two prior proceedings (one criminal and one administrative) have occurred, and the witnesses thereto have given slightly varying accounts at each proceeding. Throw in the fact that most, if not all, of the witnesses and parties involved had their senses dulled on the night in question by the intake of alcohol, and the Court finds this a quintessential case for the jury to decide.

In short, "[c]ausation is generally a jury question unless, in a particular case, the question is 'so free from doubt as to justify taking it from the jury.'" *Ricketts v. City of Columbia, Missouri,* 36 F.3d 775, 779 (8th Cir.1994), *quoting Trudeau v. Wyrick,* 713 F.2d 1360, 1366–67 (8th Cir.1983); *see Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 34 F.3d 753, 756 (9th Cir.1994), *amended by* 42 F.3d 1306 (9th Cir.1994)(holding that "a question of causation is preeminently a question of fact, to be decided after trial."). Here, the Court cannot say that the question of causation is so free from doubt as to remove the issue from the jury, and therefore, Patterson's motion for summary judgment on this basis is denied.

### 2. *Color of Law*

*Second,* Patterson contends that he is entitled to summary judgment on Count I of McCloughan's Amended Complaint because he was not acting under color of state law in any of the actions which he took at the Office North Tavern on the night of January 15, 1999. In support of his argument, Patterson points to the fact that he was not in uniform, that he did not display his badge, that he did not identify himself as a police officer, and that he did not display his service revolver. Patterson claims that, all of the actions which he took during the night in question, he performed as a private citizen. Because he did not clothe himself with the authority of the state, Patterson argues that he is entitled to summary judgment on McCloughan's § 1983 cause of action against him.

"Liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) 'was committed by a person acting under color of state law' and (2) 'deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Yang v. Hardin,* 37 F.3d 282, 284 (7th Cir.1994), *quoting Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 331–32, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "The first step in analyzing a section 1983 claim is to identify the specific constitutional injury." *Vasquez v. Hernandez,* 60 F.3d 325, 328 (7th Cir.1995), *citing Kernats v. O'Sullivan,* 35 F.3d 1171, 1175 (7th Cir.1994); *see Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)(holding that "[t]he first inquiry in any § 1983 suit [is] to isolate the precise constitutional violation with which [the defendants] are charged."). Here, McCloughan's alleged constitutional injury is not disputed, and rightly so, as an unwarranted assault and battery by persons acting under color of law implicates the Fourth Amendment's protection against unreasonable searches and seizures. *Yang,* 37 F.3d at 284–85; *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Rather, the dispute in the instant case centers around the first element, *i.e.,* whether Patterson was acting under color of state law when he hit and kicked McCloughan. Although this is a close question, the Court believes that a genuine issue of material fact exists which precludes the Court from entering summary judgment in Patterson's favor.

■ An individual acts under color of state law for § 1983 purposes when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); *Thomas v. Pearl,* 998 F.2d 447, 450 (7th Cir.1993). Generally, acts of a state or local employee in his official capacity occur under color of law regardless of whether his conduct was in furtherance of the state's goals or whether the actions constitute an abuse of power. *West v. Atkins,* 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). On the other hand, state officials who act without the clothing of state authority do not subject themselves to § 1983 liability. *Hughes v. Meyer,* 880 F.2d 967, 971 (7th Cir.1989).

■ Most police officers are considered state officials for purposes of § 1983. *Kindred v. Hilt–Dyson,* 1995 WL 250417, *2 (N.D.Ill. April 27, 1995). However, the fact that an individual is a police officer does not render all of his actions to be under color of state law. *Gibson v. City of Chicago,* 910 F.2d 1510, 1516 (7th Cir. 1990). The United States Supreme Court has held that the "acts of officers in the

ambit of their personal pursuits are plainly excluded." *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). Conversely, "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Id.*

 No bright line rule exists for distinguishing between personal pursuits and activities taken under color of law. *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir. 1994). However, the United States Supreme Court has devised a two-part test for courts to follow in determining whether conduct which allegedly deprived a plaintiff of a federally protected right is attributable to the state: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"; and (2) the depriving party must be "a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

"The important consideration ... in determining whether an officer is acting under color of state law is the nature of the specific acts performed." *Latuszkin v. City of Chicago,* 250 F.3d 502, 505–06 (7th Cir.2001). In other words, "[d]eciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Pickrel v. City of Springfield, Illinois,* 45 F.3d 1115, 1118 (7th Cir.1995).

 In the present case, the fact that Patterson did not verbally identify himself as a police officer, did not display his badge, did not display his service revolver, did not display handcuffs, was not in uniform, was not on-duty, and did not inform Patterson that he was under arrest all weigh in favor of a finding that he was acting as a private citizen and not under color of state law.

Nevertheless, the Seventh Circuit has noted that the issue of whether an individual is acting under color of law is a jury question if there remain "unanswered questions of fact regarding the proper characterization of the actions." *Gibson,* 910 F.2d at 1517. McCloughan has tendered evidence that Jeffrey Tavernor identified himself as a Springfield police officer when he attempted to stop McCloughan from leaving the bar's parking lot. Patterson came to the parking lot after hearing a collision, seeing the Bronco rocking back and forth, and hearing yelling-specifically yelling by Jeffrey Tavernor-from the scene of the accident.

The Court believes that a jury must determine the proper characterization of Patterson's actions on the night of January 15, 1999. Specifically, did Patterson take the actions which he took in order to assist Jeffrey Tavernor as his brother-in law or to assist Jeffrey Tavernor as his fellow Springfield police officer? *See Lang v. City of Round Lake Park,* 87 F.Supp.2d 836, 841–42 (N.D.Ill.2000)(denying summary judgment because conflicting accounts were given regarding whether an off-duty police officer acted under color of law). In other words, the Court believes that, due to the factual disputes, a jury must decide whether Patterson's actions toward McCloughan were related in some way to his duties as a Springfield police officer. *Gibson,* 910 F.2d at 1517.

Furthermore, McCloughan has tendered evidence with which a reasonable jury could conclude that Patterson intervened in a dispute involving others pursuant to a duty imposed upon him by Springfield police department regulations. *See Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975)(noting that "[t]here was other

evidence which permitted an inference that [the officer] ... intervened in the dispute pursuant to a duty imposed by police department regulations."). Specifically, Rule 10 of the Springfield police department regulations provides that "[a] sworn officer is vested with the powers of a peace officer by law, at all times, whether on or off duty ...." *See Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989)(noting that because, under local ordinance, the deputy sheriffs retained authority to conduct official police action, any action purportedly taken pursuant to this authority could be considered taken under color of state law). A reasonable jury could conclude that Patterson responded based upon a duty imposed upon him by Springfield police department regulations, and thus, he did so under color of state law.

In short, the Court finds that the proper characterization of Patterson's actions on the night in question creates an issue of fact for the jury to decide. Accordingly, Patterson's motion for summary judgment on this basis is denied.

B. *CITY*

The City of Springfield has also moved for summary judgment on McCloughan's *respondeat superior* claim against it. In its motion, the City argues that it is entitled to summary judgment on Count V of McCloughan's Amended Complaint because none of the officers present at the Office North Tavern were acting within the scope of their employment on the night of January 15, 1999. The City contends that none of the officers were in uniform, displayed a badge, were on duty, were driving City vehicles, or placed McCloughan under arrest. The City claims that, because none of the officers were acting in furtherance of its goals or designs, it cannot be held liable for Patterson's or Tavernor's intentional tort upon McCloughan. Finally, the City asserts that, because Patterson's and Tavernor's actions toward McCloughan were willful or reckless, it cannot be held liable to him based upon the doctrine of *respondeat superior.*

■ "To succeed under *respondeat superior,* plaintiffs would have to establish that the assault ... was committed by the [Defendants] within the scope of their agency or employment." *Hills v. Bridgeview Little League Ass'n,* 195 Ill.2d 210, 231, 745 N.E.2d 1166, 1180, 253 Ill.Dec. 632, 646 (2000), citing *Wright v. City of Danville,* 174 Ill.2d 391, 405, 675 N.E.2d 110, 118, 221 Ill.Dec. 203, 211 (1996). Although the Illinois Supreme Court has not adopted a precise definition for the phrase "scope of employment," it has employed the broad criteria enunciated in Restatement (Second) of Agency § 228 (1958), as a means of determining whether an individual was acting within the scope of his employment. *Pyne v. Witmer,* 129 Ill.2d 351, 359–60, 543 N.E.2d 1304, 1308, 135 Ill.Dec. 557, 561 (1989). As the Seventh Circuit has stated, "[u]nder Illinois law, the conduct of a servant is within the scope of employment if, but only if: (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the master." *Duffy v. United States,* 966 F.2d 307, 314 (7th Cir.1992); *see Hargan v. Southwestern Elec. Coop., Inc.,* 311 Ill. App.3d 1029, 1032, 725 N.E.2d 807, 809, 244 Ill.Dec. 334, 336 (2000)(same). "The burden is on the plaintiff to show the contemporaneous relationship between tortious act and scope of employment." *Pyne,* 129 Ill.2d at 360, 543 N.E.2d at 1309, 135 Ill.Dec. at 562.

"When scope of employment is at issue, summary judgment is not favored under Illinois law because it is a question of fact." *Luna v. Meinke,* 844 F.Supp. 1284, 1288 (N.D.Ill.1994), *citing Landrus v. Eagle*

*Wings Indus., Inc.,* 236 Ill.App.3d 711, 715, 603 N.E.2d 816, 819, 177 Ill.Dec. 746, 749 (1992); *see Pyne,* 129 Ill.2d at 359, 543 N.E.2d at 1308, 135 Ill.Dec. at 561 (holding that "[s]ummary judgment is generally inappropriate when scope of employment is at issue."); *see also Gaffney v. City of Chicago,* 302 Ill.App.3d 41, 49, 706 N.E.2d 914, 919, 236 Ill.Dec. 40, 45 (1998)(noting "that generally the question whether an act is within the scope of an employee's employment is left to the jury ....."). "Nonetheless, 'if no reasonable person could conclude from the evidence that an employee was acting within the course of employment [the court should] hold as a matter of law that the employee was not so acting.'" *Luna,* 844 F.Supp. at 1288, *quoting Pyne,* 129 Ill.2d at 359, 543 N.E.2d at 1308, 135 Ill.Dec. at 561.

■ In the instant case, after considering the factors enunciated in § 229 of the Restatement (Second) of Agency (1958), the Court finds that a genuine issue of material fact exists regarding the issue of whether Patterson and Tavernor were acting within the scope of their employment on the night of January 15, 1999.

*First,* stopping individuals who violate traffic laws, who are involved in an automobile accident, and who are attempting to leave the scene of an automobile accident constitutes conduct consistent with the duties of a police officer and is of the same general nature of actions in which the City authorizes its police officer to engage. In fact, these acts are commonly performed by police officers, and the City would have reason to expect its officers to take these actions. § 229(2)(a) & (f) Restatement (Second) of Agency (1958). After McCloughan's truck struck Tavernor's Bronco, Tavernor identified himself as a police officer, instructed him to stop his vehicle, and then physically attempted to keep McCloughan at the scene until on-duty Springfield police officers arrived.

Moreover, as the Court stated *supra,* a genuine issue of material fact exists regarding the proper characterization of Patterson's actions. Specifically, a jury must determine whether Patterson performed the actions which he took in order to assist Jeffrey Tavernor as his brother-in law or to assist Jeffrey Tavernor as his fellow Springfield police officer.

*Second,* although both Patterson and Tavernor were off-duty at the time of their confrontation with McCloughan, Springfield police rule 10 provides that "[a] sworn officer is vested with the powers of a peace officer by law, at all times, whether on or off duty ....." In addition, other off duty police officers assisted Patterson and Tavernor in subduing McCloughan, kept him at the scene, and delivered him to on-duty Springfield police officers who placed him under arrest upon their arrival.

*Third,* because Tavernor identified himself, almost immediately, as a police officer, a reasonable jury could conclude that his actions in engaging McCloughan were motivated, at least in part, pursuant to his duties as a Springfield police officer. "'Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person.' (Restatement (Second) of Agency § 236, at 523 (1958)). Comment a following section 236 makes it clear that the person performing the acts may 'serve two masters both of whom are interested in the performance of the same act.' Restatement (Second) of Agency, § 236, Comment a, at 523 (1958)." *Landrus,* 236 Ill.App.3d at 717, 603 N.E.2d at 820, 177 Ill.Dec. at 750. Thus, the Court cannot say as a matter of law that Patterson and Tavernor were acting outside the scope of their employment in their conduct towards McCloughan. *See Montgomery v. Petty Mgmt. Corp.,* 323 Ill.App.3d 514, 518, 752 N.E.2d 596, 599, 256 Ill.Dec. 716, 719

(2001)(holding that "[o]nly if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting.").

 Furthermore, the City's claim that, because Patterson and Tavernor acted willfully they cannot be considered to have acted within the scope of their employment, is incorrect. Both the Seventh Circuit and Illinois courts have held that an employer can be held liable for willful, malicious, and even criminal acts performed within the scope of their employment. *See Bremen State Bank v. Hartford Accident & Indem. Co.*, 427 F.2d 425, 428 (7th Cir.1970)(holding that an "employer is liable for the negligent, wilful, malicious, or criminal acts of its employees when such acts are committed during the course of employment and in furtherance of the business of the employer . . . ."); *see also Babb v. Minder*, 806 F.2d 749, 752 (7th Cir.1986)(same); *see also Hoover v. University of Chicago Hosps.*, 51 Ill. App.3d 263, 266–67, 366 N.E.2d 925, 928– 29, 9 Ill.Dec. 414, 417–18 (1977) (same); *see also Stern v. Ritz Carlton Chicago*, 299 Ill.App.3d 674, 677, 702 N.E.2d 194, 196, 234 Ill.Dec. 28, 30 (1998), *quoting Deloney v. Board of Educ. of Thornton Township*, 281 Ill.App.3d 775, 784, 666 N.E.2d 792, 798, 217 Ill.Dec. 123, 129 (1996)(holding that "[i]n the context of *respondeat superior* liability, an employer may be liable for the 'negligent, wilful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer.' "); *see also La-Monte v. City of Belleville*, 41 Ill.App.3d 697, 705, 355 N.E.2d 70, 78 (1976)(holding that "[g]overnmental units are liable in tort on the same basis as private tortfeasors . . . whether negligent torts or willful and wanton torts are involved."); *see also Zambrana–Marrero v. Suarez–Cruz,*

172 F.3d 122, 129 (1st Cir.1999)(holding that the fact that the officers may have acted with criminal motive when they intervened in a bar fight did not preclude a finding that officers acted under color of state law for § 1983 purposes because the officers could be deemed to be state actors even when abusing positions given to them by the state). Accordingly, the Court is precluded from entering summary judgment in the City's favor.

*Ergo*, Defendant Daniel S. Patterson's Motion for Summary Judgment and the City of Springfield's Motion for Summary Judgment are DENIED.